JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CR-18-00258-EJD |
| Plaintiff, | ) |
| v. | ) **MS. HOLMES' OPPOSITION TO** |
| | ) **GOVERNMENT'S MOTIONS *IN LIMINE*** |
| ELIZABETH HOLMES and | ) |
| RAMESH "SUNNY" BALWANI, | ) Date:    March 23, 24, 2021 |
| | ) Time:    10:00 AM |
| Defendants. | ) CTRM:  4, 5th Floor |
| | ) |
| | ) Hon. Edward J. Davila |
| | ) |
| | ) |
| | ) |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    RESPONSE TO GOVERNMENT *MOTION IN LIMINE* NO. 1: EVIDENCE REGARDING VICTIMS ...................................................................................................................1

        A.    Evidence Concerning Materiality and Impeachment (Investors) ...........................1

        B.    Evidence that Others Have Committed Same Crimes Without Facing Prosecution.................................................................................................................4

II.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 2: REFERENCES TO PUNISHMENT.................................................................................................................5

III.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 3: ADVICE-OF-COUNSEL DEFENSE........................................................................................................................6

IV.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 4: EVIDENCE OF COORDINATION WITH COMPETITORS/JOURNALISTS .......................................7

V.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 5: GOOD-FAITH DEFENSE......8

VI.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 6: CMS REPORT AND CORRESPONDENCE...................................................................................................10

VII.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 7: TEXT MESSAGES ...............13

VIII.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 8: THERANOS EMPLOYEES AND AGENTS ...............................................................................................................14

        A.    Statements of Theranos Employees and Agents ..................................................14

        B.    Adoptive or Authorized Admissions ..................................................................17

IX.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 9: DEFENDANTS' STATEMENTS OFFERED BY DEFENDANTS ..........................................................19

X.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 10: NON-PAYING CUSTOMERS................................................................................................................21

XI.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 11: 26.2 DISCLOSURE ...........22

CONCLUSION.......................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

### CASES

<u>Pages</u>

*Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338 (Fed. Cir. 1999) ..........................................11

*Beech Aircraft Co. v. Rainey*, 488 U.S. 153 (1988) ........................................................................20

*Boren v. Sable*, 887 F.2d 1032 (10th Cir. 1989) ......................................................................15, 16

*Bourjaily v. United States*, 483 U.S. 171 (1987) ..............................................................................13

*Breneman v. Kennecott Corp.*, 799 F.2d 470 (9th Cir. 1986) ......................................................15

*Kungys v. United States*, 485 U.S. 759 (1988) ....................................................................................2

*L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924 (9th Cir. 2002) ..............................................14

*Lippay v. Christos*, 996 F.2d 1490 (3d Cir. 1993)..............................................................................16

*Neder v. United States*, 527 U.S. 1 (1999) ..........................................................................................2

*Nipper v. Snipes*, 7 F.3d 415 (4th Cir. 1993)....................................................................................11

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) ..........................................11

*Tijani v. Holder*, 628 F.3d 1071 (9th Cir. 2010) ..................................................................................9

*Uche-Uwakwe v. Shinseki*, 972 F. Supp. 2d 1159 (C.D. Cal. 2013) ..............................................15

*United States v. Agne*, 214 F.3d 47 (1st Cir. 2000)..........................................................................16

*United States v. Alpine Land & Reservoir Co.*, 887 F.2d 207 (9th Cir. 1989)....................................20

*United States v. Barreiro*, 2015 WL 7734139 (N.D. Cal. Dec. 1, 2015) ..........................................1, 9

*United States v. Benny*, 786 F.2d 1410 (9th Cir. 1986)....................................................................8, 9

*United States v. Bogucki*, 2019 WL 1024959 (N.D. Cal. Mar. 4, 2019)............................................2

*United States v. Bonds*, 608 F.3d 495 (9th Cir. 2010).................................................... *passim*

*United States v. Brown,* 9 F.3d 907 (11th Cir. 1993) ........................................................................11

*United States v. Casher*, 2020 WL 2771818 (D. Mont. May 28, 2020) ..............................................3

*United States v. Chang*, 207 F.3d 1169 (9th Cir. 2000) ....................................................................13

*United States v. Collicott*, 92 F.3d 973 (9th Cir. 1996)....................................................................20

*United States v. Corrales-Vazquez*, 931 F.3d 944 (9th Cir. 2019)....................................................11

*United States v. Dashner*, 2015 WL 3660331 (N.D. Cal. June 2, 2015) ............................................1, 20

*United States v. Ghilarducci*, 220 F. App'x 496 (9th Cir. 2007) ...........................................................8

*United States v. Gibson,* 2018 WL 4903261 (E.D. Va. Oct. 9, 2018)...................................................22

*United States v. Gibson*, 690 F.2d 697 (9th Cir. 1982) ........................................................................15

*United States v. Horned Eagle*, 214 F. Supp. 2d 1040 (D.S.D. 2002) ................................................12

*United States v. Howell*, 231 F.3d 615 (9th Cir. 2000) ..........................................................................8

*United States v. Kirk*, 844 F.2d 660 (9th Cir. 1988)............................................................................15

*United States v. Lindsey*, 850 F.3d 1009 (9th Cir. 2017) ...................................................................3, 4

*United States v. Lopez-Medina*, 596 F.3d 716 (10th Cir. 2010)......................................................14, 21

*United States v. Markevich*, 775 F. App'x 287 (9th Cir. 2019) .............................................................2

*United States v. Maximov*, 2011 WL 4915162 (D. Ariz. Oct. 17, 2011) ...............................................2

*United States v. Murgio,* 2017 WL 365496 (S.D.N.Y. Jan. 20, 2017)............................................10, 12

*United States v. Nevarez*, 659 F. App'x 417 (9th Cir. 2016) ..........................................................17, 18

*United States v. Oates*, 560 F.2d 45 (2d Cir. 1977) .............................................................................11

*United States v. Orellana-Blanco*, 294 F.3d 1143 (9th Cir. 2002).................................................11, 17

*United States v. Peterson*, 538 F.3d 1064 (9th Cir. 2008) .....................................................................2

*United States v. Quinones-Chavez,* 641 F. App'x 722 (9th Cir. 2016)............................................20, 21

*United States v. Ramsey*, 785 F.2d 184 (7th Cir. 1986) .......................................................................16

*United States v. Sager*, 227 F.3d 1138 (9th Cir. 2000) ......................................................................7, 8

*United States v. Sutton,* 801 F.2d 1346 (D.C. Cir. 1986) ....................................................................21

*United States v. White*, 692 F.3d 235 (2d Cir. 2012) .............................................................................5

*United States v. Williams*, 2017 WL 4310712 (N.D. Cal. Sept. 28, 2017) ....................................1, 5, 6

*United States v. Yagi*, 2013 WL 10570994 (N.D. Cal. Oct. 17, 2013) ...........................................1, 19

*United States v. Yang*, 2019 WL 5536213 (N.D. Cal. Oct. 25, 2019)...........................................*passim*

*Universal Health Services v. U.S. ex rel. Escobar*, 136 S. Ct. 1989 (2016) .....................................3, 4

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. V ........................................................................................................................4, 21

# RULES AND REGULATIONS

42 C.F.R. § 493.563 ..............................................................................................................10

Fed. R. Crim. P. 26.2 ...........................................................................................................22

Fed. R. Evid. 104 .................................................................................................................13

Fed. R. Evid. 106 ........................................................................................................ *passim*

Fed. R. Evid. 403 .........................................................................................................14, 22

Fed. R. Evid. 404 ...........................................................................................................4, 7

Fed. R. Evid. 801 ........................................................................................................ *passim*

Fed. R. Evid. 803 ....................................................................................................10, 11, 12

# OTHER AUTHORITIES

Kenneth W. Graham, Jr., 21A *Fed. Prac. & Proc. Evid.* (2d ed. 2015) ..................................21

Restatement (Third) of Agency (2006)................................................................................15

Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* (11th ed. 2015) .....................21

1    The government's motions *in limine* seek premature, boilerplate, and sweeping relief from this

2    Court.  For many of its motions, the government fails to cite even a single piece of evidence to which its

3    requested ruling would apply, leaving the Court to assess its vague requests in an evidentiary vacuum.

4    Courts in this district routinely deny identical motions *in limine* by the government as premature and/or

5    overbroad.  *See, e.g.*, *United States v. Yang*, 2019 WL 5536213, at *2 (N.D. Cal. Oct. 25, 2019); *United

6    States v. Williams*, 2017 WL 4310712, at *8 (N.D. Cal. Sept. 28, 2017); *United States v. Barreiro*, 2015

7    WL 7734139, at *1 (N.D. Cal. Dec. 1, 2015); *United States v. Dashner*, 2015 WL 3660331, at *4 (N.D.

8    Cal. June 2, 2015); *United States v. Yagi*, 2013 WL 10570994, at *3 (N.D. Cal. Oct. 17, 2013).

9    Additionally, many of the government's motions rest on incorrect views of the law; for example, the

10   government incorrectly claims that it can impute the statements of any Theranos employees to Ms.

11   Holmes.  The government's motions should be denied.

12   **I.      RESPONSE TO GOVERNMENT *MOTION IN LIMINE* NO.  1: EVIDENCE
13           REGARDING VICTIMS**

14   The government's first request is a general order prohibiting Ms. Holmes from arguing "an

15   improper defense of blaming her victims."  Government Motions *In Limine*, ECF No. 588 ("Gov't

16   MIL") at 1-3.  In support of this motion, the government speculates that Ms. Holmes will "blame her

17   victims" by asserting that investors should have exercised more diligence or that investors did not rely

18   on alleged misstatements; and that the government has not prosecuted others for the same crime.  Ms.

19   Holmes addresses each argument in turn.

20        **A.      Evidence Concerning Materiality and Impeachment (Investors)**

21   The government seeks a vague order precluding Ms. Holmes from "arguing that the victims were

22   negligent, were not actually misled, or were otherwise at fault in this case."  Gov't MIL at 3.  To be sure,

23   victim negligence is not a defense to wire fraud.  But the government's ambiguous motion apparently

24   seeks to exclude evidence that is relevant to several pertinent issues and is therefore admissible.  The

25   Court should not exclude evidence that bears on the materiality of the alleged misstatements, evidence

26   concerning Ms. Holmes' intent, and/or evidence that is relevant to impeachment of alleged victim

27   witnesses.

28

MS. HOLMES' OPPOSITION TO GOVERNMENT'S MOTIONS *IN LIMINE*
CR-18-00258-EJD

1

The government's requested relief is overbroad because it excludes admissible evidence that bears on materiality. "[M]ateriality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes." *Neder v. United States*, 527 U.S. 1, 25 (1999). A statement is material if it "has a natural tendency to influence, or was capable of influencing, the decision of *the decisionmaking body to which it was addressed*." *United States v. Peterson*, 538 F.3d 1064, 1072 (9th Cir. 2008) (emphasis added) (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)). While the Ninth Circuit has said that materiality is an "objective" standard, it "[has] explained [that] how a particular decisionmaker would have reacted to particular statements is relevant to whether those statements were material." *United States v. Yang*, 2019 WL 5536213, at *2 (N.D. Cal. Oct. 25, 2019) (citing *Peterson*, 538 F.3d at 1073).

As courts in this district have recognized, evidence regarding the particular circumstances of an alleged victim may well provide important "context" to the materiality inquiry. *See United States v. Bogucki*, 2019 WL 1024959, at *2 (N.D. Cal. Mar. 4, 2019) (holding that, notwithstanding objective nature of the inquiry, "materiality must be assessed in the context in which the communications occurred; in consequence, industry practices, agreements between the parties, and other information known to the parties at the time of the allegedly false statements are relevant to assessing those statements' materiality"). Thus, for example, in *Bogucki*, the district court considered as part of the materiality inquiry testimony from an employee of the alleged victim that he understood the parties were on opposite sides of an arm's length transaction and that both sides were "posturing" and "bluffing" as part of their negotiations. *See id.* at *2, *5; s*ee also United States v. Maximov*, 2011 WL 4915162, at *4 (D. Ariz. Oct. 17, 2011) ("[T]he jury must consider the decisionmaking body to which the false statement was addressed in deciding whether a misrepresentation is material.").

Likewise, the government's motion would lead to exclusion of evidence about how alleged victims reacted to alleged misrepresentations that is highly relevant to their credibility and thus may be proper impeachment evidence. In *United States v. Markevich*, 775 F. App'x 287 (9th Cir. 2019), the government elicited testimony from an employee of the alleged victim about the victim's lending standards to establish the materiality of the alleged misrepresentation. *Id.* at 290. The district court

precluded the defense from asking the employee on cross-examination about how the victim "actually operated." *Id.* The Ninth Circuit held that the court's ruling violated the Confrontation Clause. *Id.*; *see Yang*, 2019 WL 5536213, at *3 (a victim's knowledge of the alleged misrepresentation "could constitute relevant impeachment evidence"); *United States v. Casher*, 2020 WL 2771818, at *2 (D. Mont. May 28, 2020) (stating that if government elicited evidence that witnesses relied on allegedly false statements a defendant may submit evidence that the witnesses "***did not*** rely on the false statements and that the information was not capable of influencing their decision making" (emphasis in original)).

Courts in this district have denied similar motions filed by the government in fraud cases when the government seeks to exclude evidence bearing on materiality or impeachment evidence. *See Yang*, 2019 WL 5536213, at *3. In *Yang*, like here, the government sought to exclude "Defendants from offering an improper defense blaming their victims" including an identical request to exclude argument that the "victims . . . could have or should have exercised more diligence or skepticism in their dealings with Defendants." *Id.* The court recognized that, although reliance is not an element of wire fraud, "the line between evidence that goes to materiality as opposed to an improper defense (*e.g.*, of the victim's lack of reliance) is less than clear." *Id.* The court denied the motion "[t]o the extent the [g]overnment's motion [sought] to preclude impeachment evidence and evidence bearing on materiality." *Id.* The same result should follow here. And because the government does not seek to exclude any specific evidence in its motion, further discussion of admissibility is not possible.

Finally, evidence regarding an alleged victim's subjective reaction to alleged misstatements, or more generally regarding an alleged victim's standards for assessing investments, may well be relevant to Ms. Holmes' intent. If Ms. Holmes possessed information indicating that particular information was immaterial to a particular victim, that knowledge would undoubtedly be relevant to whether she intended to defraud that victim with respect to such information.[1]

---

[1] The government cites *United States v. Lindsey*, 850 F.3d 1009, 1015 (9th Cir. 2017), for the proposition that materiality "is not concerned with a statement's subjective effect on the victim, but only the intrinsic capabilities of the false statement itself." Gov't MIL at 2 n.1. *Lindsey* involved the question whether lender negligence is a defense to mortgage fraud, 850 F.3d at 1015—a question not presented here. If *Lindsey* were applied more broadly to foreclose a defendant from presenting evidence of a statement's subjective effect on the victim, it would conflict with *Universal Health Services v. U.S. ex rel. Escobar*, 136 S. Ct. 1989 (2016), which holds that materiality may be determined by evidence of

1       The Court should not grant the government's ambiguous motion in an evidentiary vacuum,

2   particularly without seeing the government's direct examinations of its alleged victim witnesses.  Ms.

3   Holmes acknowledges that victim negligence is not a defense to wire fraud and that reliance is not an

4   element of wire fraud.  Nonetheless, evidence concerning how alleged victims made investment

5   decisions or reacted to particular statements may well bear on the elements of materiality and intent,

6   provide important context for the materiality analysis, or impeach witnesses' testimony.  The Court

7   should therefore deny the government's motion.

8       **B.**    **Evidence that Others Have Committed Same Crimes Without Facing Prosecution**

9       The government also requests an order precluding the defense from "focusing on the culture of

10  Silicon Valley startups, arguing that founders in this area frequently use exaggeration and dramatic

11  promises to generate needed attention for their companies and attract capital."  Gov't MIL at 3.  The

12  government contends that such an argument would be tantamount to a selective prosecution defense.  *Id.*

13      This motion is far too vague because the government has not identified any specific evidence

14  that it seeks to exclude.  Evidence related to the culture of Silicon Valley start-ups may well be relevant

15  to issues in the case.  For example, the government intends to present evidence of certain practices that

16  the government claims created a culture of "secrecy" at Theranos, purportedly to show that Ms. Holmes

17  was concealing alleged fraud.  *See* ECF No. 580-2 (April 3, 2020 Rule 404(b) notice) at 52-58.

18  Although Ms. Holmes has moved to exclude such evidence, if it is admitted Ms. Holmes surely could

19  present evidence that other Silicon Valley start-ups used similar practices, and that persons at Theranos

20  were aware of these practices, to negate the inference of nefarious conduct.  Such evidence would be

21  highly probative of matters at issue and would in no way constitute a selective prosecution argument.

22

23

---

24  the "likely or actual behavior of the recipient of the alleged misrepresentations," *id.* at 2002 (citation
    omitted).  The *Lindsey* Court's attempt to distinguish *Escobar* as limited to the false-claims context, *see*

25  850 F.3d at 1016-17, is wrong:  *Escobar* based its standard on general common-law principles of
    materiality, 136 S. Ct. at 2002, and noted that the same standard applies under the mail-fraud statute,

26  *id.* at 2002.  Additionally, a reading of *Lindsey* that would permit the government to present evidence of
    subjective effect to prove materiality but that would foreclose the defendant from presenting such

27  evidence herself would make no sense and would violate the Due Process Clause.  *See* U.S. Const.
    amend. V.

28

MS. HOLMES' OPPOSITION TO GOVERNMENT'S MOTIONS *IN LIMINE*
CR-18-00258-EJD

1    The Court should deny this vague motion; the government may object to particular evidence at trial if it

2    thinks the evidence unfairly suggests a selective prosecution argument.

3        More generally, Ms. Holmes notes that an order categorically barring evidence concerning the

4    government's charging decisions would infringe her constitutional right to present a complete defense.

5    *See United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012). In *White*, the Second Circuit held that the

6    district court "committed legal error when it ruled categorically that the government's charging

7    decisions are not proper subjects for cross-examination and argument." *Id.* The Court reasoned that the

8    constitutional right to present a complete defense "would be an empty one if, in view of prosecutorial

9    charging discretion, [courts] barred evidence of charging decisions in all instances with no regard for its

10   reliability or relevance." *Id.* at 246. The government's charging decisions may be relevant as the

11   evidence unfolds.

12       The Court should decline to issue a "blanket ruling precluding such evidence or argument" as

13   other courts in this district have done. *See United States v. Williams*, 2017 WL 4310712, at *8 (N.D.

14   Cal. Sept. 28, 2017) (denying identical motion by government). Rather, the Court should require the

15   government to raise its objection at the appropriate time at trial, at which point the Court will have the

16   benefit of specific evidence to consider.

17   **II.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 2: REFERENCES TO
           PUNISHMENT**

18

19       The government seeks an order precluding "any reference by the defense to the Defendant's

20   alleged suffering or potential punishment during any phase of the trial." Gov't MIL at 4. Ms. Holmes

21   acknowledges that it would be inappropriate for her counsel to identify, for example, the potential term

22   of imprisonment. The government's motion, however, goes further and seeks to exclude "subtler"

23   references to punishment, such as "the case has serious consequences for the Defendant" or "the

24   Defendant's liberty is at stake in this trial." *Id.* In *Williams*, a court in this district facing an identical

25   motion held that "the government's motion goes too far" because "[s]ubtle references such as the one

26   mentioned above are not really referencing punishment." 2017 WL 4310712, at *8 (citation omitted)

27   (denying in relevant part motion to preclude defendant from stating that "this case has serious

28

1    consequences for the defendant").  The same result should follow here:  the "subtler" references the

2    government seeks to preclude do not actually reference punishment at all.  *Id.*  The Court should deny

3    the government's overbroad motion.

4    **III.   RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 3: ADVICE-OF-COUNSEL DEFENSE**

5

6            The government seeks to preclude Ms. Holmes "from soliciting testimony or making arguments

7    suggesting that [she] relied upon advice given to her by attorneys as a defense to the charged offenses."

8    Gov't MIL at 5.  The government "concedes that ordinarily the Court may wait until hearing the

9    evidence presented at trial to rule on the appropriate jury instructions (such as an affirmative advice-of-

10   counsel defense)," but it nonetheless asks the Court to do so in this case.  *Id.* at 6.  The government's

11   request that the Court bar an advice-of-counsel defense months before proposed jury instructions are due

12   and many months before the government presents its case-in-chief is premature.

13           Ms. Holmes notes that evidence of the involvement of counsel in Theranos' affairs will almost

14   certainly be relevant to the government's case and Ms. Holmes' defense, whether or not she asserts a

15   formal advice-of-counsel defense.  Ms. Holmes and/or Theranos hired many of the country's leading

16   law firms—including Arnold & Porter Kaye Scholar LLP; Boies Schiller Flexner LLP, Covington &

17   Burling LLP, Fenwick & West LLP; Hyman, Phelps & McNamara, P.C.; Morgan, Lewis & Bockius

18   LLP; Richard, Layton & Finger, PA; Wilmer, Cutler, Pickering, Hale & Dorr LLP; Wilson Sonsini

19   Goodrich & Rosati; and Zuckerman Spaeder LLP—to advise her and her company.  The company spent

20   many millions of dollars on legal representation.  The government has put at issue many aspects of

21   Theranos' business in which attorneys (both in-house attorneys and outside counsel) were intimately

22   involved.  For example, the government's trial exhibits include privileged communications involving

23   attorneys to Ms. Holmes and Theranos; the government has moved the Court for an order allowing it to

24   use these privileged communications at trial.  *See* ECF No. 559.  The government's witness disclosures

25   include ten lawyers, both in-house and outside counsel.

26           Counsel to Ms. Holmes and/or Theranos engaged with numerous third parties, such as FDA,

27   CMS, journalists, and former employees, and evidence of those unprivileged communications may well

28

1    be relevant to the case.  Notably, in its Rule 404(b) notice, the government has indicated its intent to

2    introduce evidence concerning certain of these communications.  *See* ECF No. 580-2 at 38 ("Theranos's

3    General Counsel, who reported to Holmes, proposed joint Theranos/Safeway responses with inaccurate

4    information."); *id.* at 60 ("Theranos's General Counsel spoke to the Dow Jones' Editor-in-Chief and

5    others in an attempt to quash Carreyrou's pending story."); *id.* at 63 ("Theranos's attorneys ambushed

6    Tyler Shultz at the home of his grandfather and threatened to sue him.").

7         It would be entirely premature and improper to preclude all testimony by Ms. Holmes or others

8    regarding "statements attorneys may have made," Gov't MIL at 5, many of which may be unprivileged

9    statements.  The government's own pre-trial disclosures suggest that the government believes evidence

10   of actions by Theranos counsel is relevant.  The appropriate scope of evidence regarding actions by

11   counsel, the implications (if any) for attorney-client privilege, and the appropriate arguments to be

12   drawn from that evidence must be assessed in the context of specific evidence at trial.  The Court should

13   deny the government's premature motion.

14   ## IV.   RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 4: EVIDENCE OF COORDINATION WITH COMPETITORS/JOURNALISTS

15        The government seeks to preclude argument or evidence regarding any "coordination between

16   the government's criminal investigation" with Theranos' competitors or journalists in deciding to charge

17   Ms. Holmes with wire fraud.  Gov't MIL at 6-7.  The government submits that no "attorney or agent on

18   the prosecution team has ever had a substantive conversation with Mr. Carreyrou, Quest, or Labcorp in

19   connection with this case."  *Id.* at 6.  The government also argues that "inquiries into the government's

20   charging decisions have no tendency to make the existence of any fact that is of consequence to the

21   action more probable or less probable and are thus irrelevant."  *Id.* at 7.

22        The Ninth Circuit has rejected the government's position.  As the Ninth Circuit has aptly

23   explained, "[t]o tell the jury that it may assess the product of an investigation, but that it may not analyze

24   the quality of the investigation that produced the product, illogically removes from the jury potentially

25   relevant information."  *United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000) (holding that the

26   "district court committed plain error and abused its discretion by instructing the jury not to 'grade' the

27

28

MS. HOLMES' OPPOSITION TO GOVERNMENT'S MOTIONS *IN LIMINE*
CR-18-00258-EJD

1    investigation"). "Details of the investigatory process potentially affect[] [the investigating agent's]

2    credibility and, perhaps more importantly, the weight to be given to evidence produced by his

3    investigation." *Id.*; *see also United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000) (explaining

4    utility of evidence that "raises the opportunity to attack the thoroughness, and even good faith, of the

5    investigation").

6         The narrowness of the government's representation is telling. The government limits its

7    representation to "attorn[ies] or agent[s] of the prosecution." Gov't MIL at 6. It says nothing about

8    conversations between reporters and competitors with agents of other relevant government entities such

9    as the SEC, CMS, or FDA, that participated in the government's investigation and/or whose actions the

10   government claims are relevant to this case. *See, e.g.*, *infra*, pp. 10-12 (addressing government motion

11   to admit CMS report). The government cannot represent that no such communications occurred,

12   because the evidence at trial will prove the contrary. For example, "media attention" related to Mr.

13   Carreyrou's back-channel communications with CMS about Theranos caused CMS to use different

14   procedures for surveying Theranos than it normally would have used. *See* ECF 584-3 at 4 (Bennett 302)

15   (stating that Carreyrou was in contact with CMS before the survey). The existence of secret

16   communications between Mr. Carreyrou and government investigators undoubtedly bears on the

17   "quality of the investigation" on which the government developed its case. *Sager*, 227 F.3d at 1145.

18   The Court should deny the government's motion.

19   **V.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 5: GOOD-FAITH DEFENSE**

20        The government seeks to limit Ms. Holmes from offering a good-faith defense to the extent it is

21   improper. Gov't MIL at 7-8. As the government recognizes, and as the Ninth Circuit has explained, "an

22   honest, good-faith belief in the truth of the misrepresentations may negate intent to defraud." *United

23   States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986). The law of this Circuit draws a distinction

24   between a good-faith belief in the truth of a misrepresentation (which can negate fraudulent intent) and a

25   good-faith belief that a knowingly fraudulent scheme will eventually lead to a favorable outcome for the

26   victim. *Compare United States v. Ghilarducci*, 220 F. App'x 496, 501 (9th Cir. 2007) ("[I]f [defendant]

27   had a good-faith belief that [alleged fraudulent scheme] was legitimate, he could have been acquitted on

28

1   [mail-fraud charge]"), *with Tijani v. Holder*, 628 F.3d 1071, 1077 (9th Cir. 2010) ("To argue that it is

2   not fraud to obtain property by falsehood if one harbors the intent to pay for it at some future time is to

3   suppose that any prosecution for fraud could be defeated by the swindler saying 'I intended to pay all

4   along and will now do so.'").  It is the latter that is foreclosed by the case law.

5       The government seeks an order precluding arguments "that [Ms. Holmes] believed in good faith

6   that her victims would be repaid and would sustain no loss."  Gov't MIL at 7-8.  Such an order would be

7   overly broad and would conflate the two good-faith arguments addressed above.  Ms. Holmes is entitled

8   to argue, among other things, that she believed any alleged misrepresentations were true and accordingly

9   that Theranos was a legitimate business generating value for investors.

10      In *Barreiro*, for example, the government similarly moved *in limine* "to preclude Defendants

11  from presenting a claim of good faith" and that "Defendants thought that the . . . investors would

12  ultimately be repaid and suffer no loss."  2015 WL 7734139, at *1.  The court denied the motion,

13  recognizing, for the reasons stated above, that "Defendants are entitled to argue that they lacked intent to

14  defraud because they believed, in good faith, that any alleged misrepresentations were true and that [the

15  alleged scheme] was a legitimate business."  *Id.*  Similarly, Ms. Holmes is entitled to elicit evidence that

16  shows she believed that Theranos was a legitimate business and that her statements were true.  Such

17  arguments go to her alleged intent to defraud, a core element in this case, and are permissible.

18      *United States v. Benny*, the only case on which the government relies, is not to the contrary.  786

19  F.2d 1410, 1417 (9th Cir. 1986).  In *Benny*, the defendant objected to the trial court's exclusion of a jury

20  instruction that he intended to repay the victims of his scheme and therefore he did not intend harm.  *Id.*

21  The Ninth Circuit held that, although "an honest, good-faith belief in the truth of the misrepresentations

22  may negate intent to defraud," a good-faith belief that the victim will not suffer a loss is no defense

23  when the defendant admits to the fraudulent scheme.  *Id.*  The court explained that, because the

24  defendant "admitted at trial that he falsified information," he was not entitled to a good-faith intent to

25  repay instruction.  *Id.*  Ms. Holmes does not intend to admit fraud, so *Benny* is irrelevant.  The Court

26  should deny the government's motion.

27

28

1
2

## VI. RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 6: CMS REPORT AND CORRESPONDENCE

3    The government seeks to admit CMS's January 26, 2016 Report (CMS Report) under the public

4   records exception to the rule against hearsay.  Gov't MIL at 8-10.  The government argues that the CMS

5   report should be admitted because it purportedly demonstrates that Theranos had not met "[a] new

6   standard in quality" with "[t]he highest levels of accuracy"[2] and that "Theranos, despite its

7   representations to investors, was not capable of consistently producing accurate and reliable blood test

8   results and that its proprietary analyzer had accuracy and reliability problems."  Gov't MIL at 9.  Ms.

9   Holmes has addressed at length the hearsay and relevance issues that require the exclusion of this report

10  in her Motion to Exclude Evidence of CMS Survey Findings and Sanctions, ECF No. 574.  Ms. Holmes

11  incorporates by reference the arguments in that motion.  Briefly, Ms. Holmes provides the following

12  additional arguments.

13    The government summarily argues that the Report is admissible under Rule 803(8)(A)(ii)

14  because it "is a statement of a public office (*i.e.*, CMS) setting out matters observed while under a legal

15  duty to report" and the CMS surveyors are not "law-enforcement personnel."  Gov't MIL at 10.  The

16  Court should deny this motion for two additional reasons.

17    First, Rule 803(8)(A)(iii) prohibits the admission in a criminal case *against a defendant* of a

18  "record or statement of a public office" that sets out "factual findings from a legally authorized

19  investigation."  It can hardly be disputed that the CMS Report—a public agency report containing

20  factual findings pursuant to an investigation authorized by federal regulation—falls under Rule

21  803(8)(A)(iii).  *See* 42 C.F.R. § 493.563(a)(1)(i) ("CMS or a CMS agent may conduct an inspection of

22  an accredited laboratory that has been issued a certificate of accreditation on a representative sample

23  basis or in response to a substantial allegation of noncompliance.").  Rule 803(8)(A)(iii) thus bars

24  admission of the report against Ms. Holmes regardless of whether Rule 803(8)(A)(ii) could apply to the

25

26    [2] Of the nine alleged misrepresentations in Paragraph 12 of the Third Superseding Indictment,
27  none allege that Ms. Holmes misrepresented that Theranos had "[a] new standard in quality" with "[t]he
   highest levels of accuracy."  Gov't MIL at 9.  The government cannot amend its Indictment to include
   new alleged misrepresentations in its motion *in limine.*
28

MS. HOLMES' OPPOSITION TO GOVERNMENT'S MOTIONS *IN LIMINE*
CR-18-00258-EJD

report—which, for the reasons stated below, it could not.  *United States v. Murgio,* 2017 WL 365496, at *12 (S.D.N.Y. Jan. 20, 2017) ("Because each of the proffered [public] records contains 'factual findings from a legally authorized investigation,' the records are not admissible under Rule 803(8)(A)(ii) against [a criminal defendant].").

The government cannot invoke Rule 803(8)(A)(ii) to accomplish an end-run around the more specific prohibition of Rule 803(8)(A)(iii).  *See, e.g.*, *United States v. Oates*, 560 F.2d 45, 77 (2d Cir. 1977) (reviewing legislative history and concluding that "the effect of FRE 803(8)(B) and (C) was to render law enforcement reports *and evaluative reports* inadmissible against defendants in criminal cases." (emphasis added)); *see also United States v. Corrales-Vazquez*, 931 F.3d 944, 950 (9th Cir. 2019) (stating that "general language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment").  Under that logic, every agency investigative report with factual findings would become admissible against a criminal defendant as long as the agency was not a law-enforcement agency, improperly rendering Rule 803(8)(A)(iii) superfluous.  *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645-46 (2012) (explaining how the "general/specific canon" acts with the anti-surplusage canon to avoid "the superfluity of a specific provision that is swallowed by [a] general one").  As the advisory committee note makes clear:  "In one respect, however, the rule with respect to evaluate reports under item (c)[3] is *very specific*; they are admissible *only* in civil cases and *against the government* in criminal cases."  Fed. R. Evid. 803(8) advisory committee note (emphasis added).

Courts have rejected similar efforts by the government in criminal cases to use one hearsay exception to admit evidence that another exception prohibits.  For example, the Ninth Circuit and other circuits have held that the business records exception cannot be used as a "back door" to introduce evidence that would not be admissible under Rule 803(8)(A)(ii).  *See United States v. Orellana-Blanco*, 294 F.3d 1143, 1149 (9th Cir.2002); *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1345 (Fed. Cir. 1999); *United States v. Brown,* 9 F.3d 907, 911 (11th Cir. 1993).  "To hold otherwise would

---

[3] The current Rule 803(8)(A)(iii) is functionally equivalent to the provision formerly styled as Rule 803(8)(C), which applied to "factual findings resulting from an investigation made pursuant to authority granted by law."  *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993).

render Rule 803(8)(B) meaningless and would frustrate the intent of Congress." *United States v. Horned Eagle*, 214 F. Supp. 2d 1040, 1042 (D.S.D. 2002).  This rationale applies with equal force to the government's using Rule 803(8)(A)(ii) to admit evidence that Rule 803(8)(A)(iii) prohibits.  Because the CMS Report falls under Rule 803(8)(A)(iii) and the government seeks to offer it against a defendant in a criminal case, the Report is inadmissible.

Second, and independently, the government cannot show that the report recounts objective matters "observed" by CMS surveyors, as required by Rule 803(8)(A)(ii).  "Rule 803(8)(A)(ii) contemplates the admission of records recounting events or objective facts directly observed by a particular government actor." *Murgio*, 2017 WL 365496, at *7.  The CMS Report does not recount events or objective facts directly observed by government actors, but rather is replete with "findings of fact," "evaluative conclusions, legal conclusions, and even recommendations, all of which go well beyond simple matters observed." *Id.* at *9.  The claimed deficiencies cited in the government's motion are based on CMS surveyors' "review of verification procedures, verification documentation and interview with general supervisor and technical supervisor"—not the surveyors' personal, objective observations.  *See* Govt' MIL at 8-9; *see also, e.g.,* ECF No. 588-3, Gov't Ex. B at 4403 (providing bases for findings).  Similarly, the immediate jeopardy finding cited by the government is a legal determination based on evaluative findings, not an observation of an objective fact.  *Id.* at 4383 ("[I]t was *determined* that the deficient practices of the laboratory pose immediate jeopardy" (emphasis added)).  Because the CMS findings are "evaluative conclusions arrived at through an investigatory process," they do not fall under Rule 803(8)(A)(ii).  *Murgio*, 2017 WL 365496, at *7.

For the foregoing reasons, and the reasons stated in Ms. Holmes' Motion to Exclude Evidence of CMS Survey Findings and Sanctions, ECF No. 574, the Court should deny the government's motion.[4]

---

[4] The government also seeks to admit Theranos' responses to the CMS Report.  Gov't MIL at 10. For the reasons stated in Ms. Holmes Motion to Exclude the CMS Findings, ECF No. 574, and Motion to Exclude Evidence of Subsequent Remedial Measures, ECF No. 572, the Court should also deny that request.

MS. HOLMES' OPPOSITION TO GOVERNMENT'S MOTIONS *IN LIMINE*
CR-18-00258-EJD

1    **VII.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 7: TEXT MESSAGES**

2         The government seeks to admit excerpts of Spreadsheets it represents to be electronic messages

3    exchanged between Ms. Holmes and Mr. Balwani.  Gov't MIL at 10-15.  The government points to

4    certain sections of the spreadsheets and asks the Court to admit these excerpts and "any similar ones

5    offered by the government."  *Id.* at 14.

6         Ms. Holmes objects to admission of both the excerpted messages in the government's motion

7    and "any similar [messages] offered by the government."  *Id.*  The proponent of the evidence has the

8    burden of proving its admissibility.  *United States v. Chang*, 207 F.3d 1169, 1176 (9th Cir.2000); *see*

9    *also Bourjaily v. United States*, 483 U.S. 171, 176 (1987) (applying preponderance-of-the-evidence

10   standard to evaluate evidence proffered as admissible under Federal Rule of Evidence 801(d)(2)).  The

11   government has failed to carry that burden.

12        First, there are substantial questions regarding the document's authenticity.  The production

13   letters cited by the government are hearsay, and they provide no information regarding how these

14   spreadsheets were compiled from which one could determine whether they are comprehensive

15   collections of Ms. Holmes' and Mr. Balwani's text messages.  *See* ECF Nos. 588-8, Gov't Ex. G; 588-

16   10, Gov't Ex. I.  And the government neglected to mention Ms. Holmes' testimony in her SEC

17   deposition that she had never seen the spreadsheet before.  ECF No. 588-9, Gov't Ex. H at 376.  It is

18   unclear how the government intends to authenticate the text messages at trial.

19        Second, the government fails to demonstrate the relevance of the excerpted messages, and it

20   cannot do so on this bare record.  If the government seeks to admit such messages in advance of trial,

21   devoid of context, it should be required to explain their relevance.  To the extent the Court considers this

22   motion pre-trial, the Court should order the government to identify the specific text messages that it

23   seeks to admit and to proffer under Rule 104(b) the evidence that will prove the relevance of the

24   oftentimes ambiguous text messages.  Otherwise, the government will need to establish the relevance of

25   particular text messages at trial at such time as it attempts to admit them.

26        Additionally, Ms. Holmes notes that under Rule 106, she is entitled to introduce any text

27   messages "that in fairness ought to be considered at the same time" of any message the Court admits.

28

MS. HOLMES' OPPOSITION TO GOVERNMENT'S MOTIONS *IN LIMINE*
CR-18-00258-EJD

Fed. R. Evid. 106. "This fairness principle can override the rule excluding hearsay." *See United States v. Lopez-Medina*, 596 F.3d 716, 735 (10th Cir. 2010) ("Even if the fact allocution would be subject to a hearsay objection, that does not block its use when it is needed to provide context for a statement already admitted."). It is easy to see how the rule of completeness will apply with special force to these text messages; plucking one text message out of a string of text messages could well create a misleading impression. The Court should deny the government's premature motion.

## VIII.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 8: THERANOS EMPLOYEES AND AGENTS

The government seeks a broad ruling admitting statements of "Theranos employees and agents" under Rule 801(d)(2)(D) and adoptive admissions under Rule 801(d)(2)(B) and (C). Gov't MIL at 15-17. As an initial matter, it is unclear how the Court could grant such a motion in a vacuum without the government identifying the statements (or even the particular speakers) at issue. Ms. Holmes may well have relevance, Rule 403, or other objections to the admissibility of statements by Theranos employees.

The government limits its arguments to potential hearsay objections, but even those arguments are legally flawed. The Court cannot permissibly rule in the government's favor without an evidentiary foundation for the statements at issue. Its motion should be denied.

### A.    Statements of Theranos Employees and Agents

The government first seeks to admit all statements of Theranos employees and agents on the ground that they were agents of Ms. Holmes, rendering their statements admissible under Rule 801(d)(2)(D). Gov't MIL at 16-17. The government, "as the proponent of the evidence, [bears] the burden of establishing a foundation from which to conclude that the statement was within a hearsay exclusion." *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 934 (9th Cir. 2002). Under Rule 801(d)(2)(D), the "government [is] required to demonstrate [that the agency relationship existed] by a preponderance of the evidence." *United States v. Bonds*, 608 F.3d 495, 507 (9th Cir. 2010).[5] This is "a

---

[5] The government cannot prove the existence of the agency relationship with only the statement itself. *See* Fed. R. Evid. 801(d)(2); *L.A. News Service*, 305 F.3d at 934 ("The contents of the [hearsay] statements . . . are not alone sufficient to establish" that the hearsay declarant was an agent of a party-opponent or that the declaration was within the scope of the agency.").

1   fact-based inquiry applying common law principles of agency." *Id.* at 504 (citation omitted).

2   Additionally, the government bears the burden to show that the statement concerned matters within the

3   scope of the declarant's employment. *Uche-Uwakwe v. Shinseki*, 972 F. Supp. 2d 1159, 1168 (C.D. Cal.

4   2013); *see also Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir. 1986).

5      Under general agency principles, Theranos employees were not Ms. Holmes' agents. Theranos

6   employed many hundreds of individuals. They—like Ms. Holmes herself—were agents of Theranos. In

7   other words, Ms. Holmes and other Theranos employees were co-agents of Theranos—not principal and

8   agent. *See* Restatement (Third) of Agency § 1.04(1) & cmt. a; *see also Bonds*, 608 F.3d at 504

9   (considering Restatement (Third) of Agency when applying this hearsay exception). The government

10  cites no case imputing the statements of hundreds of employees to a corporate CEO under Rule

11  801(d)(2)(D), and undersigned counsel is aware of no such case. To the contrary, it is well recognized

12  that an employee's "mere occupation of a subordinate position in the corporate chain of command" does

13  not suffice "to establish an 'agency relationship' for the purpose of admission under Rule 801(d)(2)(D)."

14  *Boren v. Sable*, 887 F.2d 1032, 1040 (10th Cir. 1989).

15     The government suggests that the usual agency requirement of Rule 801(d)(2)(D) does not apply

16  in cases of "private companies owned, controlled, and managed by an individual defendant." Gov't

17  MIL at 16. Its cases do not support that proposition. In *United States v. Kirk*, 844 F.2d 660 (9th Cir.

18  1988) (per curiam), the Ninth Circuit held that the relevant employees qualified as the defendant's

19  agents, but its discussion is so cursory that it is impossible to tell what evidence the Court relied on in

20  reaching that conclusion. *Id.* at 663. Additionally, the court stated that "more important[]" to its

21  decision was the fact that the statements were not admitted for the truth of the matter asserted (rendering

22  Rule 801(d)(2) irrelevant). In *United States v. Gibson*, 690 F.2d 697 (9th Cir. 1982), the Court likewise

23  held that the statements were not admitted for the truth; it then held in the alternative, with no

24  discussion, that the statements were either statements of agents or co-conspirators. *Id.* at 699. Neither

25  case appears to involve a corporation of the size of Theranos, and neither case purports to abrogate this

26  Circuit's rule that, in determining "whether . . . statements are admissible under Rule 801(d)(2)(D), [a

27

28  MS. HOLMES' OPPOSITION TO GOVERNMENT'S MOTIONS *IN LIMINE*
    CR-18-00258-EJD

1    court] must 'undertake a fact-based inquiry applying common law principles of agency.'" *Bonds*, 608

2    F.3d at 504 (citation omitted).

3          The government's out-of-circuit cases similarly do not support its categorical rule.  To the

4    contrary, in *United States v. Agne*, 214 F.3d 47 (1st Cir. 2000), the First Circuit acknowledged that

5    "[w]hether the statements of a corporate employee may be admitted against a corporate officer depends

6    upon the relationship between the employee and the officer."  *Id.* at 54.  The First Circuit noted that an

7    agency relationship may exist where, for example, "the declarant is directly responsible to the

8    defendant," "the declarant reports directly to the defendant who owns an overwhelming majority of

9    stock in the company," "the declarant was hired by the defendant and worked on matters in which the

10   defendant was actively involved," or the defendant "directed [the declarant's] work on a continuing

11   basis."  *Id.* at 55 (citing cases); *see also United States v. Ramsey*, 785 F.2d 184, 187, 191 (7th Cir. 1986)

12   (applying rule to employees who "executed" the "instructions" issued by the defendant).  None of those

13   tests would allow the court to impute to Ms. Holmes the statements of every Theranos employee, the

14   vast majority of whom did not report to Ms. Holmes and did not work with her on an active basis.

15         As already set forth, under the common-law principles that the Ninth Circuit applies, Ms.

16   Holmes and other Theranos employees did not have a principal-agent relationship.  Even under the test

17   applied by some circuits, the proponent of evidence must show that the opposing party "directed" the

18   subordinate speaker's work "on a continuing basis" to permit admission under Rule 801(d)(2)(D).

19   *Boren*, 887 F.2d at 1041; *see also Lippay v. Christos*, 996 F.2d 1490, 1498-99 (3d Cir. 1993).  As the

20   courts have explained, "expanding the rule to include statements made by any person who is subordinate

21   to a party opponent may create a loophole in the hearsay rule through which evidence not contemplated

22   by the authors of Rule 801 could be admitted."  *Boren*, 887 F.2d at 1040 (citation omitted).  The

23   government has not attempted to make this showing for all of the hundreds of Theranos employees, nor

24   could it possibly do so.  The Court should deny the government's motion.

25

26

27

28

1

### B.    Adoptive or Authorized Admissions

2    The government requests that the Court admit certain prior interrogatory responses by Theranos

3    under Rule 801(d)(2)(B) and (C) on the theory that Ms. Holmes adopted or authorized them.[6]  Gov't

4    MIL at 17.  In support, the government states only that Ms. Holmes was "a co-defendant in the lawsuit

5    at the time the statements were made and her own interrogatory responses made reference to Theranos's

6    statements."  *Id.*  Ms. Holmes and Theranos were represented by separate counsel in the at-issue

7    litigation and served separate interrogatory responses.  *See* Gov't Exs. N (ECF No. 588-15), P (ECF No.

8    588-17), Q (ECF No. 588-18), and R (ECF No. 588-19).  Ms. Holmes' responses incorporate Theranos'

9    "objections" but not its interrogatory answers.  ECF No. 588-15, Gov't Ex. N at 2.  Ms. Holmes did not

10    adopt Theranos' answers; in response to ten interrogatories, Ms. Holmes referred the counterparty to

11    certain of Theranos' interrogatory responses.  *See id.* at 13, 15, 16, 17-18, 22, 23, 26.  Those specific

12    references do not include the statements cited by the government in its motion.  *See* Gov't MIL at 17.

13    Rule 801(d)(2)(C) provides that a statement is a non-hearsay party admission if it "is offered

14    against a party and is . . . a statement by a person authorized by the [defendant] to make a statement

15    concerning the subject."  "Subsection (C) thus requires the declarant to have specific authority from a

16    party to make a statement concerning a particular subject."  *Bonds*, 608 F.3d at 502.  Rule 801(d)(2)(B)

17    requires the statement to be "one the party manifested that it adopted or believed to be true."  Before

18    finding a statement to be an adoptive admission, a court must "mak[e] a threshold finding that the

19    government had presented an adequate factual basis for a jury to reasonably conclude that [the

20    defendant] had manifested an adoption" of the statement.  *United States v. Nevarez*, 659 F. App'x 417,

21    419 (9th Cir. 2016) (citing *United States v. Orellana-Blanco*, 294 F.3d 1143, 1148 (9th Cir. 2002)).

22    With respect to Rule 801(d)(2)(C):  the government has cited no evidence whatsoever suggesting

23    that Ms. Holmes authorized Theranos to make the relevant statements.  As noted, Ms. Holmes and

24    Theranos had separate representation, suggesting that Ms. Holmes did not authorize Theranos'

25

26

27    [6] The government purports to identify the interrogatory responses as one "example" of an authorized or adopted admission, but it identifies no other examples.  Gov't MIL at 17.  It would be premature for the Court to issue a ruling admitting other, unidentified admissions with no foundation.

28

MS. HOLMES' OPPOSITION TO GOVERNMENT'S MOTIONS *IN LIMINE*
CR-18-00258-EJD

1    interrogatory responses or control corporate counsel.  And there is nothing in her responses that suggests

2    that she authorized Theranos' responses.

3           With respect to Rule 801(d)(2)(B):  As an initial matter, most of the statements the government

4    claims that Ms. Holmes adopted by general reference to Theranos' interrogatories post-date her own

5    interrogatory responses.  Theranos' First Supplemental Responses (ECF No. 588-18, Gov't Ex. Q at 58)

6    and Theranos' Responses to Plaintiffs' Second Set of Interrogatories (ECF No. 588-19, Gov't Ex. R at

7    59) are dated January 31, and January 30, 2017 respectively.  The statements in those interrogatories

8    were made over a month and a half *after* Ms. Holmes' December 12, 2016 interrogatory responses.  ECF

9    No. 588-15, Gov't Ex. N at 28-29.  A party cannot "manifest that it adopted [a statement] and believed it

10   to be true" before the statement was even made.  *See* Fed. R. Evid. 801(d)(2)(B).[7]

11          As for the subset of Theranos' responses that were contemporaneous with Ms. Holmes'

12   responses (ECF No. 588-17, Gov't Ex. P), Ms. Holmes did not reference *any* of the interrogatory

13   responses the government cites in its motion, Gov't MIL at 17, and thus plainly did not indicate her

14   agreement to them.  Even if she had, a general reference to certain of Theranos' interrogatory responses

15   would not indicate that Ms. Holmes adopted those responses as her own.  Notably, unlike with

16   Theranos' objections, Ms. Holmes did not "incorporate" Theranos' responses.  To the contrary, she

17   simply referred to certain responses and, in places, told the reader that she "[did] not have information

18   beyond what [was] provided" in those responses.  *E.g.*, ECF No. 588-15, Gov't Ex. N at 17.  Absent

19   evidence that Ms. Holmes "affirmatively agree[d]" with Theranos' responses, the government has failed

20   to lay a foundation for admission of Theranos' responses.  *Nevarez,* 659 F. App'x at 419.  The Court

21   should deny the government's motion.

22

23

24

25

---

26      [7] The government mischaracterizes Theranos' responses.  The government cites Theranos'
     response regarding its Department of Defense contracts as including a statement that the contracts
27   "produc[ed] de minimus revenue."  Gov't MIL at 17.  No such statement appears in the document.  *See*
     ECF No. 588-19 Ex. R at 23 (Interrogatories 62-63).

28   MS. HOLMES' OPPOSITION TO GOVERNMENT'S MOTIONS *IN LIMINE*
     CR-18-00258-EJD

1    **IX.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 9: DEFENDANTS'**
2         **STATEMENTS OFFERED BY DEFENDANTS**

3         The government moves for a sweeping order excluding statements of Ms. Holmes offered by Ms.

4    Holmes on the grounds that any statements would be hearsay.  Gov't MIL at 17-20.  This motion, like

5    others, is premature.  "The admissibility of a particular statement depends on the content of the

6    statement and the purpose for which the party seeks to introduce that statement into evidence [and

7    therefore] [w]ithout greater context, the Court cannot say that Defendants' out-of-court statements

8    would be hearsay, let alone that an exception to hearsay does not apply."  *Yang*, 2019 WL 5536213, at

9    *4 (deferring ruling on identical government motion *in limine* to preclude defendants' statements).

10        Courts in this district have declined to rule on similar boilerplate motions attempting to preclude

11   statements admitted by defendants on hearsay grounds.  *See, e.g., Yagi*, 2013 WL 10570994, at *3.  In

12   *Yagi*, as here, the government moved to preclude the defendants from offering their own prior

13   statements on hearsay grounds.  *Id.* at *2.  In *Yagi*, as in this case, "[t]he government's motion [did] not

14   specify the proposed exhibits or statements to which it object[ed], but rather generally state[d] any such

15   statement [was] inadmissible hearsay and that the 'prior consistent statement' doctrine [was]

16   inapplicable."  *Id.* (citation omitted).  The court noted that the hearsay rule is only applicable to the

17   extent a particular statement is offered for the truth of the matter asserted.  *Id.* at *3.  Critically, the court

18   explained that its "ability to rule on this motion is hampered by the government's failure to specifically

19   identify those exhibits to which it was objecting."  *Id.* at *2-3.  The court therefore ordered the

20   government to "file a list of the specific exhibits to which it objects and a detailed statement of the bases

21   for this objection."  *Id.* at *5; *see also Yang*, 2019 WL 5536213, at *4 (declining to rule on identical

22   motion when government failed to point to any statements to which the ruling could apply).  The Court

23   cannot possibly decide this motion in a vacuum, and it would be impossible to assess the purpose for

24   which any statement might be offered until trial.

25        The government similarly seeks to preempt Ms. Holmes' use of the rule of completeness without

26   proffering a single statement or document for the Court to consider.  *See* Gov't MIL at 19-20.  When the

27   complete statement serves to correct a misleading impression created by an excerpt, the rule of

28

**MS. HOLMES' OPPOSITION TO GOVERNMENT'S MOTIONS *IN LIMINE***
CR-18-00258-EJD

1    completeness requires admission of the full statement.  Without a document, let alone a statement, the

2    Court is simply not able to make a ruling.  *Cf. United States v. Dashner*, 2015 WL 3660331, at *4 (N.D.

3    Cal. June 2, 2015) (reserving ruling on motion barring defendants from invoking rule of completeness

4    until "after carefully and thoroughly considering the government's proffered statements").  "Such a

5    decision is better made when the Court has before it the particular statements and conversation at issue."

6    *Yang*, 2019 WL 5536213, at *4.  "[C]ourts should not render advisory opinions upon issues which are

7    not pressed before the court, precisely framed and necessary for decision."  *Yang*, 2019 WL 5536213, at

8    *4 (quoting *United States v. Alpine Land & Reservoir Co.*, 887 F.2d 207, 214 (9th Cir. 1989)).

9        The Court should deny the motion on this basis alone.  Nevertheless, Ms. Holmes notes

10   substantive flaws with the government's arguments regarding prior inconsistent statements and the rule

11   of completeness.  The Ninth Circuit "has historically allowed a party to introduce prior statements

12   because they were part of the same conversation or document from which impeaching inconsistent

13   statements were drawn."  *United States v. Collicott*, 92 F.3d 973, 979-80 (9th Cir. 1996).  This is

14   because an "opposing party may not pick and choose among prior statements to create an appearance of

15   conflict and then object when this appearance is rebutted by means of a fuller version of the same prior

16   statements."  *Id.* at 980 (citation omitted).  Accordingly, for example, if the government seeks to

17   impeach Ms. Holmes' credibility through prior inconsistent statements, she is entitled to introduce other

18   statements that were part of the conversation or document that place the alleged inconsistencies in a

19   broader context or that "demonstrate[e] that the inconsistencies were a minor part of an otherwise

20   consistent account."  *Id.* at 980.

21       As for the rule of completeness, the government fails to acknowledge the common-law rule of

22   completeness, which operates independently of Rule 106 and applies to oral statements.  *See Beech*

23   *Aircraft Co. v. Rainey*, 488 U.S. 153, 171-72 (1988) (applying common-law rule of completeness even

24   after it was "partially codified" in Rule 106); *see also Collicott*, 92 F.3d at 983 n.12 (assuming that

25   common-law rule of completeness applies to oral statements).  Critically, the common-law rule of

26   completeness supersedes the hearsay rule.  *United States v. Quinones-Chavez*, 641 F. App'x 722, 729-30

27   (9th Cir. 2016) (Fisher, J., conc.)  ("The common law doctrine carries with it . . . the trumping function;

28

MS. HOLMES' OPPOSITION TO GOVERNMENT'S MOTIONS *IN LIMINE*
CR-18-00258-EJD

that is, evidence that falls within the completeness doctrine is admissible even though it would otherwise be inadmissible under some other rule of evidence." (quoting Kenneth W. Graham, Jr., 21A *Fed. Prac. & Proc. Evid.* § 5072 (2d ed. 2015)) (alterations omitted)).  The fairness principle embodied in the rule can override the rule excluding hearsay.  *See Lopez-Medina,* 596 F.3d at 735 ("Even if the fact allocution would be subject to a hearsay objection, that does not block its use when it is needed to provide context for a statement already admitted."); *United States v. Sutton,* 801 F.2d 1346, 1368 (D.C. Cir. 1986) ("Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously.  A contrary construction raises the specter of distorted and misleading trials, and creates difficulties for both litigants and the trial court.").

Therefore, the "appropriate way to resolve the hearsay issue is to hold that the party who offers an incomplete statement or document forfeits any hearsay objection to completing evidence that is necessary to correct a misleading impression." *Quinones-Chavez*, 641 F. App'x at 730 (Fisher, J., conc.) (quoting Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual*, § 106.02 (11th ed. 2015)).  A ruling to the contrary runs the risk of violating Ms. Holmes' constitutional right against self-incrimination.  "As numerous courts have recognized, a criminal defendant should not be forced to choose between leaving the government's distorted presentation unanswered and surrendering the Fifth Amendment right not to testify." *Quinones-Chavez*, 641 F. App'x at 731 (citing cases).

For the reasons stated above, the motion should be denied.

## X.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 10: NON-PAYING CUSTOMERS

The government seeks an order permitting it to admit evidence relating to Theranos customers who did not pay for their tests notwithstanding this Court's prior ruling that such customers are not proper victims in this wire-fraud case.  ECF No. 330 at 28-33.  Specifically, the government identifies five such customers and claims that these customers received "inaccurate" pregnancy (hCG), PT-INR, estradiol, and HIV tests.  Gov't MIL at 21-23.

1    The government's motion just highlights the reasons why no customers—paying or non-

2    paying—should be permitted to testify about supposedly inaccurate test results.  As Ms. Holmes

3    explained in her Motion To Exclude Evidence of Anecdotal Test Results, ECF No. 563, because all lab

4    tests produce occasional errors, the fact that a handful of customers received unexpected or inaccurate

5    tests results has no probative value to whether Theranos' technology was capable of consistently

6    producing accurate and reliable test results.  No reliable evidence proves that Theranos' technology was

7    incapable of consistently producing accurate test results for hCG, PT-INR, estradiol, and HIV.

8    Conspicuously, the government's retained expert, Dr. Master, offers *no* opinion whatsoever about PT-

9    INR or estradiol.  And, as Ms. Holmes explained in her motion to exclude Dr. Master's testimony, he

10    was unable to reach an opinion that Theranos was incapable of consistently producing accurate and

11    reliable hCG and HIV test results due to a lack of information.  *See* ECF No. 560 at 4-5, 8-10.  Absent

12    reliable evidence connecting these patients' test results to a problem with Theranos' technology—and no

13    such evidence exists—their testimony is irrelevant and misleading.[8]  And the emotional nature of their

14    testimony further renders it inadmissible under Rule 403.  *See generally* Mot. To Exclude Customer

15    Impact Evidence, ECF No. 562 at 3-6; *see also United States v. Gibson,* 2018 WL 4903261, at *6 (E.D.

16    Va. Oct. 9, 2018) ("[C]ourts have repeatedly held that evidence of collateral loss sustained by victims of

17    fraud should be excluded at trial as unfairly prejudicial.").

18    The Court should deny the government's motion and should exclude its proffered anecdotal

19    evidence of allegedly inaccurate test results by non-paying (and paying) patients.

20    **XI.    RESPONSE TO GOVERNMENT MOTION *IN LIMINE* NO. 11: 26.2 DISCLOSURE**

21    The government seeks a ruling ordering Ms. Holmes to produce statements pursuant to Federal

22    Rule of Criminal Procedure 26.2 "within ten days of the hearing on this motion."  Gov't MIL at 25.

23    Pursuant to the Court's December 2, 2020 Minute Order, the parties intend to resolve this issue without

24    Court intervention.

25

26

27    _____

[8] It is also irrelevant for the additional reason that the government fails to connect a number of
these episodes to Ms. Holmes.  *See* Gov't MIL at 21-23.

28

1

**CONCLUSION**

2        For the foregoing reasons, the Court should deny the government's motions *in limine*.

3

4   DATED: January 8, 2021                    Respectfully submitted,

5

6                                            /s/ Amy Mason Saharia
                                            KEVIN DOWNEY
7                                            LANCE WADE
                                            AMY MASON SAHARIA
8                                            KATHERINE TREFZ
                                            Attorneys for Elizabeth Holmes
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MS. HOLMES' OPPOSITION TO GOVERNMENT'S MOTIONS *IN LIMINE*
CR-18-00258-EJD

1

**<u>CERTIFICATE OF SERVICE</u>**

2        I hereby certify that on January 8, 2021 a copy of this filing was delivered via ECF on all counsel

3    of record.

4

5                                        /s/ Amy Mason Saharia

6                                        AMY MASON SAHARIA
                                         Attorney for Elizabeth Holmes
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    MS. HOLMES' OPPOSITION TO GOVERNMENT'S MOTIONS *IN LIMINE*
      CR-18-00258-EJD