STEPHANIE M. HINDS (CABN 154284)
Attorney for the United States,
Acting Under Authority Conferred By 28 U.S.C. § 515

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
VANESSA BAEHR-JONES (CABN 281715)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5589
    Fax: (408) 535-5066
    john.bostic@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING WEALTH, SPENDING, AND LIFESTYLE [ECF No. 567] |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | Date:  March 23, 2021<br>Time:  10:00 a.m.<br>Court:  Hon. Edward J. Davila |
| Defendants. | |

## INTRODUCTION & FACTUAL BACKGROUND

Defendant's pending motion asks the Court for an order preventing the jury from learning about the benefits she obtained from her successful schemes to defraud. Those benefits—including direct financial gain, great wealth in the form of stock holdings, fame and admiration in the business and technology communities, and access to various perquisites through the resources of Theranos itself—constituted Defendant's motive to engage in her schemes to defraud investors and patients. That evidence of motive is relevant and admissible at Defendant's trial, when the jury will be asked to make ultimate findings about her intent to defraud.

During the time period most relevant to this case, Defendant was the founder and CEO of one of the most admired technology startups in the country. It was not revealed until later that Theranos's reputation and corporate value were premised on false promises about what the company's technology could do. Before Defendant's fraud came to light, she received numerous benefits, notably including a six-figure salary and an ownership stake in Theranos that was valued at up to $4.5 billion.

As CEO, Defendant also had access to the resources of Theranos itself. The company provided a number of perquisites to Defendant in her role as CEO, including travel on private jets, stays in luxury hotels, and access to multiple assistants. Although Defendant's assistant was an employee of the company, she handled a range of non-business tasks for Defendant, including personal clothes and jewelry shopping, home decorating, food and grocery buying, and other items.

Theranos's stock—both literal and figurative—soared as a result of Defendant's misleading statements exaggerating the company's achievements. As a result, Defendant's stature and popularity rose as well. She was the object of admiration in the business community locally and nationwide, and appeared in numerous publications and on television. She associated with influential individuals including politicians and business leaders. The evidence at trial will show that these benefits were meaningful to Defendant, who closely monitored daily news to cultivate her image.

Evidence like the above is admissible to show motive and intent, as discussed below. The Court should deny Defendant's motion to exclude it.

/ /

# ARGUMENT

## I. Details of Benefits Received by Defendant Are Admissible Evidence Probative of Her Motive and Intent

Defendant relies on cases like *United States v. Mitchell* for the proposition that evidence of a defendant's finances is inadmissible in criminal cases. (Mot. at 3). That case is ultimately unhelpful to Defendant's argument, however, as its facts are easily distinguished. In *Mitchell*, evidence of a defendant's poverty was introduced at trial to demonstrate motive to commit a bank robbery, and the defendant appealed. *United States v. Mitchell*, 172 F.3d 1104, 1106-07 (9th Cir. 1999). Although the Ninth Circuit disapproved of the use of financial evidence to prove the defendant's lack of economic means in that case, it noted that it was not handing down a blanket rule for all scenarios. The court recognized that, when it comes to the admissibility of such evidence, "[n]o general proposition can properly resolve all cases, because the multiplicity of circumstances in human conduct is too great." *Id.* at 1109. In that particular case, the evidence was improper because it "did not show more than the mere fact that the defendant is poor." *Id.*

Here, in contrast, the earnings and other benefits received by Defendant are not relevant merely to show that she was wealthy. Instead, they represent the *product of Defendant's fraud*, making them far more probative of her motive and intent to engage in the charged crime. Defendant's misleading statements about Theranos were responsible for the company's temporary success and the resulting improvement in her finances, lifestyle, and social standing. Simply put, the fact that Defendant gained a variety of tangible and intangible benefits from the fraud tends to show that she intended to defraud in order to obtain those benefits. Similarly, Defendant's desire to retain her wealth and status created a powerful motive for Defendant to continue and conceal her fraud.

The Ninth Circuit's analysis in *Reyes* is on point, and is binding here. In that case, the defendant was a former CEO of a successful company, convicted of a fraudulent scheme involving backdated stock options. *United States v. Reyes*, 660 F.3d 454 (9th Cir. 2011). On appeal, the defendant objected to the introduction of evidence that, during the relevant time period, he received backdated options work approximately $130 million and exercised approximately $2 million worth of those options. *Id.* at 463. The Ninth Circuit rejected the defendant's argument that that evidence was irrelevant and unduly

prejudicial, noting that the evidence was admitted because it "related to motive, knowledge, and intent, and because it demonstrated that Reyes made money in the backdating scheme." *Id.* The court in *Reyes* acknowledged previous opinions discouraging the introduction of evidence "simply to show that [the defendant] is wealthy." *Id.* at 464 (citing *Mitchell*, 172 F.3d at 1108-09 (9th Cir. 1999). Nonetheless, the Ninth Circuit confirmed that "the government was allowed to introduce evidence about Reyes's motivation for his involvement in the backdating scheme, his scienter, even if such evidence is generally not sufficient, standing alone, to prove intent to defraud." *Id.* Finally, that court noted that both parties in the *Reyes* trial presented evidence that the defendant had gained approximately $2 million from the conduct in question and had not received the full potential gain of $130 million that could have been realized on his backdated options. *Id.* Under those circumstances, and because the jury in that case was properly instructed on the elements, the Ninth Circuit held that the details of the defendant's personal gain constituted "probative evidence of [defendant's] motive, knowledge, and intent to participate in the backdating scheme." *Id.* The admission of that evidence "fell far short of meeting the level required to find unfair prejudice."[1]

More recently, in *Weygandt*, the Ninth Circuit affirmed a fraud conviction following a trial in which the government made references to the defendant's wealth in order to show that the defendant had alternatives to fraud but engaged in a scheme to increase his personal earnings. *United States v. Weygandt*, 681 Fed. Appx. 630, 633 (9th Cir. 2017). The Ninth Circuit found no clear error in the admission of that evidence, recognizing that, while "financial condition alone has little probative value and risks unfair prejudice," "such evidence may be admissible if it proves motive, knowledge, or intent." *Id.* The Supreme Court has also weighed in on this issue in a related context. In a securities fraud action, the Supreme Court noted that the absence of a motive allegation was not fatal to a plaintiff's claim, but observed that "motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325

---

[1] As the Ninth Circuit noted, the district court in *Reyes* acknowledged the possibility for undue prejudice when it excluded evidence that the defendant made $500 million from the sale of his company's stock, allowing the government instead to state that the defendant had sold "a significant amount" of stock. *Id.* at 463-64. The dollar amounts of personal gain Defendant received in this case do not rise to the level that warranted exclusion in *Reyes*, but are in line with what the *Reyes* court approved for presentation to the jury.

(2007).

Other courts have also recognized that "[e]vidence that a defendant personally profited from a fraud may provide circumstantial evidence of an intent to participate in that fraud." *United States v. Naranjo*, 634 F.3d 1198, 1207 (11th Cir. 2011); *see also United States v. Navarro-Ordas*, 770 F.2d 959, 966-67 (11th Cir. 1985) (affirming fraud conviction based partly on evidence that defendant stood to profit personally from the scheme in the form of a lucrative job and ownership stake in a bank). Indeed, some courts have affirmed the admissibility of evidence about a defendant's financial health even where the purpose was simply to show motive to steal and not the personal gain from a successful fraudulent scheme. *See, e.g.*, *United States v. Noland*, 960 F.2d 1384, 1386 (8th Cir. 1992) (In mail fraud trial, evidence of defendant's poor financial health was admissible and not unduly prejudicial, as "evidence of [a defendant's] motive is generally admissible where relevant.")

Defendant's motion compares Defendant's salary and lifestyle to that of other CEOs in an effort to paint her personal gain as typical and innocuous. The comparison to other CEOs, though, is persuasive only if one assumes that the money and other benefits Defendant obtained were not the result of fraudulent conduct. In those circumstances, evidence regarding a defendant's wealth and lifestyle would have an insufficient nexus with the charged conduct. The analysis changes, of course, when the benefits at issue actually result from the fraudulent conduct. Then, the benefits are strong evidence of a fraudster's motive and intent to defraud. Naturally, the defense argues that Defendant's conduct was lawful, such that her compensation and lifestyle were in line with industry norms. The Court should not adopt this reasoning, which prejudges the evidence and usurps the jury's fact-finding role. The causal connection between Defendant's fraud and the benefits at issue is strong. Moreover, the fact that Defendant apparently used company resources for personal benefit—for example, by directing her assistant to handle numerous non-business tasks—is relevant because it underscores Defendant's intention to use the company as a tool to better her personal situation.

Evidence of Defendant's fame and popularity during the time of the fraud is relevant for the same reasons. In addition to the tangible benefits that she received from her fraud, she also was the beneficiary of a great deal of favorable attention from the media, business leaders, and dignitaries. Defendant graced the covers of several prominent magazines and was interviewed by respected

journalists.  She received awards and commendations from influential individuals and societies.  The evidence at trial will show that these intangible benefits were a strong motivating force for Defendant, and that these benefits were clearly a result of Defendant's fraud.

## II.  The Evidence is Admissible in Response to Anticipated Defense Arguments

This category of evidence is also important and admissible because it rebuts an anticipated defense theory.  In media appearances and in pleadings filed by her attorneys, Defendant has advanced the argument that her actions at Theranos were motivated by a desire to bring beneficial technology to the public rather than by a desire for personal gain.  For example, in a July 2014 video released by *USA Today*, Defendant claimed that Theranos had redeveloped all the tests run in a traditional laboratory to be run on a tiny sample, and touted the company's low prices that allowed "Medicare members, Medicaid members, and everybody else to be able to access the test they need."  In September 2014 Defendant told attendees at a TEDMED talk that part of the impetus to develop tools for early disease detection came from her experience with an uncle who had been diagnosed with cancer that had worsened rapidly and ultimately led to his death.  Similarly, in a video published by *Vanity Fair* in October 2015, Defendant claimed that she considered Theranos's mission in relation to her mother, who relied on Theranos for all of her tests, knowing that Theranos is "right every time."  These and other self-serving statements suggest that Defendant's primary motivation in her work at Theranos was altruistic.  Such a motivation, if accepted by the jury, would tend to undercut allegations that Defendant had the intent to deceive and cheat investors and patients who had dealings with Theranos.  The government is entitled to rebut claims by Defendant or her counsel that she was not motivated by personal gain, and it is appropriate to do that by presenting evidence of the substantial benefits Defendant received as a result of her fraud.

Similarly, the defense might point out at trial that, while Defendant was a billionaire on paper based on her ownership of Theranos stock—which increased dramatically in value due to Defendant's successful fraud—she never sold stock to realize that wealth.  The defense might argue that this fact suggests that Defendant was not motivated by financial gain and thus lacked the intent to defraud.  The truth is, however, that there was less pressure on Defendant to cash in stock in light of the financial and other benefits she was already receiving by virtue of her position at a company made successful by

fraud.

It is well-settled that the government is entitled to present evidence of motive in fraud cases. Here, Defendant's fraudulent conduct was motivated by her desire to achieve recognition in the technology and business world, and her desire to continue to receive large sums of money and numerous benefits attached to her position as the CEO of a burgeoning startup. In light of the high probative value of these details, Defendant is not entitled to exclusion of evidence under Rule 403. *See United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir.1995) ("Under the terms of the rule, the danger of prejudice must not merely outweigh the probative value of the evidence, but substantially outweigh it."); *United States v. Patterson*, 819 F.2d 1495, 1505 (9th Cir.1987) (stating that Rule 403 is "an extraordinary remedy to be used sparingly").

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion.

DATED: January 8, 2021

Respectfully submitted,

STEPHANIE M. HINDS
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515

 */s/ John C. Bostic*
JOHN C. BOSTIC
JEFF SCHENK
ROBERT S. LEACH
VANESSA BAEHR-JONES
Assistant United States Attorneys