STEPHANIE M. HINDS (CABN 154284)
Attorney for the United States,
Acting Under Authority Conferred By 28 U.S.C. § 515

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
VANESSA BAEHR-JONES (CABN 281715)
Assistant United States Attorneys

>    150 Almaden Boulevard, Suite 900
>    San Jose, California 95113
>    Telephone: (408) 535-5589
>    Fax: (408) 535-5066
>    john.bostic@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CUSTOMER SERVICE SPREADSHEETS [ECF No. 570] |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | Date:    March 23, 2021 |
| Defendants. | Time:    10:00 a.m. |
| | Court:   Hon. Edward J. Davila |

GOVT OPP TO MOT RE CUSTOMER SERVICE
SPREADSHEETS
18-CR-00258 EJD

**INTRODUCTION & FACTUAL BACKGROUND**

For several years beginning in 2013, Defendant's company Theranos offered blood testing services to doctors and patients for use in the clinical setting. Unbeknownst to Theranos's customers, the company's technology suffered from a variety of problems that negatively impacted the accuracy and reliability of many of its tests. Defendant and her coconspirators were made aware of these issues through a variety of means, including information from the scientists who developed the assays and performed the clinical testing, findings from inspections by regulatory agencies, and reports from patients and doctors who received questionable results from the company. Theranos instituted a system for logging and managing complaints that it received from its customers, and that system generated tracking charts summarizing customer contacts. Those tracking charts were updated over time and distributed within the company. On several occasions, content from those charts was forwarded directly to Defendant in her role as CEO. Although her codefendant Balwani was heavily involved in Theranos's clinical lab operations, the evidence shows that Defendant maintained a significant degree of oversight and control over the ways Theranos responded to customer complaints.

The complaint logs created by Theranos are important to the case, which will turn on the jury's findings regarding Defendant's knowledge and intent during the time when Theranos was active. The existence of the customer logs and their content are highly probative of Defendant's intent to defraud because they contributed to putting Defendant on notice regarding the shortcomings of the technology she was marketing to patient victims. The Ninth Circuit has held that this category of corporate document may be introduced into evidence as business records for this purpose, regardless of whether the individual customer complaints are admissible for their truth. *White v. Ford Motor Co.*, 312 F.3d 998, 1009 (9th Cir. 2002). Because the complaint logs are admissible in the Ninth Circuit, and because their probative value easily outweighs the risk of unfair prejudice or confusion, the Court should deem them admissible.

**ARGUMENT**

**I.    Theranos's Complaint Logs Are Admissible as Business Records and to Show Notice of Customer Complaint Submissions**

Defendant demands that Theranos's customer complaint logs be excluded from evidence as

1    double hearsay.  Fighting the idea that the logs could be business records and thus fit a hearsay

2    exception, Defendant cites authority that is neither binding nor instructive.  For instance, Defendant

3    relies on *Rowland*, a Fourth Circuit case, for the proposition that a document cannot be a business record

4    if the underlying supplier of the information does not act in the regular course.  *Rowland v. Am. Gen.*

5    *Fin., Inc.*, 340 F.3d 187, 194-95 (4th Cir. 2003).  But *Rowland* bears little resemblance to the facts of

6    this case, as it involved a single customer complaint letter rather than corporate records created and

7    maintained by a business documenting such complaints.  *Id.*

8        Contrary to Defendant's arguments and cited authority, the Ninth Circuit has held that customer

9    complaints are admissible as business records.  In *White v. Ford Motor Company*, the Ninth Circuit

10   reviewed a product liability suit against the manufacturer of a truck that had rolled over a bystander.

11   *White v. Ford Motor Co.*, 312 F.3d 998 (9th Cir. 2002).  The evidence at trial had included an exhibit

12   showing that Ford had received a number of customer complaints of rollaways.  *Id.* at 1009.  On appeal,

13   Ford argued that that evidence was inadmissible hearsay.  The Ninth Circuit disagreed, holding that the

14   customer reports "were clearly admissible under the business records exception to the hearsay rule to

15   show that Ford had notice of rollaways."  *Id.*  This approach is consistent with the reasoning of

16   *Boddicker*, a district court case relied upon by Defendant.  That case acknowledges that "a compilation

17   of such complaints by a manufacturer might constitute a business record that such claims were (or were

18   not) received."  *Boddicker v. Am. Honda Motor Co.*, No. C10-1018, 2011 WL 6132099, at *4 (N.D.

19   Iowa Dec. 8, 2011) (quoting *Olson v. Ford Motor Co.*, 410 F.Supp.2d 855, 861 (D.N.D. 2006)).

20       Defendant maintains that this kind of evidence cannot be admitted for any purpose given the

21   doubts about the truth of the underlying submissions from customers.  Notably, though, the Ninth

22   Circuit in *White* left open the question of whether the customer reports in that case could be admitted for

23   the truth of the reports' themselves.  *Id.*  The fact that the Ninth Circuit upheld the use of those customer

24   reports to show notice without concluding that the reports were admissible for their truth is fatal to

25   Defendant's argument here.  The holding in *White* shows that this kind of evidence is admissible to

26   prove notice regardless of whether the contents of the underlying reports come in for the truth.  *See also*

27   *United States v. Travers*, 114 Fed. Appx. 283, 289 (9th Cir. 2004) (holding, based on the testimony of a

28

GOVT OPP TO MOT RE CUSTOMER SERVICE
SPREADSHEETS
18-CR-00258 EJD                                  2

1   company employee who dealt with hundreds of complaint letters, that corporate records regarding the

2   complaint letters were admissible as business records even if the letters themselves were not); *Baxter*

3   *Healthcare Corp. v. Healthdyne, Inc.*, 944 F.2d 1573, 1576-77 (11th Cir. 1991) (vacated upon

4   withdrawal) (records compiled by company of customer complaints regarding relevant product were

5   admissible under Rule 803(6)).  If Defendant wishes to argue that the customer complaints might not

6   have been true, she can make that point to the jury from the witness stand or through her counsel's

7   argument.

8          Defendant next argues that the complaint logs might not meet the criteria for business records.

9   This point ignores the case law discussed above, which holds that customer complaint logs are easily

10  admissible as business records.  At best, Defendant's argument is premature.  The government continues

11  to investigate the circumstances surrounding the creation and maintenance of these logs, and the time to

12  lay the foundation for their admission as business records is at trial.  Based on available information,

13  though the government expects that these materials will qualify as business records.  Documents are

14  admissible as business records under Rule 803(6) if they are "(1) made or based on information

15  transmitted by a person with knowledge at or near the time of the transaction; (2) made in the ordinary

16  course of business; and (3) trustworthy, with neither the source of information nor method or

17  circumstances of preparation indicating a lack of trustworthiness."  *United States v. Bonallo*, 858 F.2d

18  1427, 1435 (9th Cir. 1988).

19         Here, a review of Theranos's internal emails suggests that customer complaints logs were created

20  contemporaneously with the receipt of complaints and in the company's ordinary course of business.

21  On May 29, 2015, Theranos's senior manager of sales training emailed Daniel Young, Theranos's

22  number-three employee.  See Exh. 54 to Bob Leach Declaration.  In that email, the sales training

23  manager states that "CS" (presumably customer service) at Theranos maintains a spreadsheet of patient

24  calls and manually enters information on a daily basis.  *Id.*  That same employee also states in the email

25  his intention to update a similar log on a weekly basis and maintain a more detailed record of resolutions

26  and conversations with clinicians.  *Id.*  When FDA conducted an inspection of Theranos, it noted the

27  following standardized process in place for complaint handling at Theranos:

28

(1) Customer calls the Customer Service number if there is a complaint; (2) Customer Service logs it and forwards it to the CLIA Lab; (3) The CLIA Lab investigates and determines if the complaint arose from such things as patient not fasting when they should have.  If it is a clinical issue, the CLIA LAB investigates the complaint and reports any adverse events under the CLIA rules.  If the CLIA Lab determines it was a device issue, then they report it to Client Solutions (the liaison group); (4) Client Solutions logs the complaint and forwards it to Theranos Quality group; (5) Theranos Quality group investigates and reports MDRs, if warranted, as required under Part 803. ECF No. 586-3 at 3 (Ex. 49).

And Defendant's skepticism notwithstanding, there is no reason to doubt the trustworthiness of the customer accounts or their summarization by Theranos customer service representatives.  Indeed, the fact that that these statements were made to a medical laboratory in the context of clinical blood test results should increase confidence in their trustworthiness.  *See* Fed. R. Evid. 803(4) (providing an exception to the hearsay rule for out-of-court statements providing information pertinent to medical diagnosis or treatment).  District courts have "wide discretion to determine whether a business record meets the trustworthiness standard of the business records exception to the rule against hearsay."  *United States v. Fuchs*, 218 F.3d 957, 965 (9th Cir. 2000).

Here, even if the customer complaint logs did not qualify as business records, they would still be admissible to show knowledge of the customer complaints received by Theranos.  Recently, the Second Circuit heard the appeal of a defendant who was convicted of criminal offenses including wire fraud stemming from his operation of an illegal payday-loan scheme.  *United States v. Mosely*, 980 F.3d 9, 13 (2d Cir. 2020).  At trial, the court had allowed into evidence complaints that borrowers had made about the defendant's businesses.  *Id.* at 27.  On appeal, Defendant challenged their admission under the hearsay rules, the Sixth Amendment Confrontation Clause, and Rule 403.  *Id.*  The Second Circuit rejected the defendant's arguments, holding that the complaints were not hearsay.  As that court reasoned, "Evidence of customer complaints may be introduced to show the defendant's culpable state of mind, however, and when so used, they are not considered to prove the truth of the matter asserted in the

1  statement.  A statement is not hearsay where it is offered, not for its truth, but to show that a listener was

2  put on notice of illegal acts." *Id.* (quotation and citation omitted).  Without invoking the business

3  records exception to the hearsay rule, *Mosley* made it clear that evidence of "complaints which were

4  called to a defendant's attention" are "relevant to the issue of the defendant's intent." *Id.* (quotation

5  omitted).  Here, as in *Mosley*, victims of Defendant's fraud submitted complaints regarding problems

6  with Theranos's tests.  Those reports—combined with information already known to Defendant about

7  the shortcomings of Theranos's technology—put her on notice that her representations to the public

8  were misleading.

9  **II.    Defendant Was Kept Informed of Customer Complaints Received by Theranos**

10        A recurring theme of Defendant's motion is the argument that Defendant herself was not

11  necessarily aware of the complaints Theranos was receiving.  The evidence does not support this view.

12  In fact, Theranos emails contain many examples of customer complaints routinely being escalated to

13  Defendant and other senior personnel at the company.  For example, one iteration of the customer

14  complaint log was produced to the defense bearing bates number THPFM0005356840.  That log

15  includes a report of a call from a patient with the initials "PM" informing Theranos of inconsistent

16  results he had obtained from an INR test the company performed.  On July 29, 2014, the same day as the

17  corresponding entry on the complaint log, Defendant herself was on at least two email chains with

18  Theranos employees reviewing the text of the complaint and discussing next steps.  In one email chain,

19  Theranos employees consult with Defendant regarding the details of the report and who would be best to

20  hold a call with the physician.  (THPFM0000019667).  In the other, Defendant assigns a Theranos

21  employee to triage the issue then come brief her so that she can decide who will call the patient or

22  physician.  (THPFM0000969990).

23        Another version of the complaint log was produced bearing bates number SEC-USAO-EPROD-

24  000714362.  That version includes an entry documenting a call from a doctor with the initials "CC,"

25  who called Theranos to report questionable PT/INR results received from Theranos, and to pass along

26  another doctor's report of multiple issues with Theranos test results.  That call was logged on October 3,

27  2014.  Within one day, the text from the complaint log entry was forwarded to both Defendants.

28
GOVT OPP TO MOT RE CUSTOMER SERVICE
SPREADSHEETS
18-CR-00258 EJD                    5

(THPFM0001177117).  In that email chain, an employee informs Balwani that this is the third similar reference received by Theranos in a two-month period, and Balwani tells Holmes that he would like to meet on the next business day to address the issue.  *Id.*

This practice at Theranos continued.  In mid-2015, a Theranos representative logged a call from the doctor treating the patient referred to as "M.E." in the operative Indictment.  (SEC-USAO-EPROD-002086260).  According to the log, that doctor reported two inconsistent PSA test results received by one of his patients.  On June 15, 2015, a Theranos employee emailed a group of Theranos personnel assigned to deal with lab issues, forwarding the text of the log entry.  (THPFM0005221060).  After the patient received another questionable PSA result from Theranos in June 2015, the chain was forwarded to Balwani, who sent it along to Defendant Holmes.  *Id.*

Defendant was also party to conversations with other senior Theranos employees regarding specific complaints and general trends in customer complaints, and former employees are expected to testify about their discussions with Defendant on these topics.  For example, in September 2014, Christian Holmes forward Defendant a summary of a customer complaint regarding problematic calcium results obtained from Theranos.  In his email to Defendant, he asks for a "candid conversation" and states that it is "pretty obvious that we have issues with calcium, potassium and sodium specifically." *Id.*  After observing that they have not heard of any root cause as to why those tests are "off," he comments on how difficult it is to have customer service calls with doctors and suggests Theranos stop reporting the problematic tests for the time being.  *Id.*  In November of that same year, Theranos's lab director Dr. Adam Rosendorff told Defendant that he felt uncomfortable and that he was being pressured to vouch for results that he could not be confident in.  At trial, Dr. Rosendorff is expected to testify that he observed increasing numbers of complaints about results from Theranos customers around this time.  Significant internal conversations like these regarding customer complaints were based on the information recorded in Theranos's customer call logs.

**III.    The Logs Are Not Barred by Rule 403, and Defendant's Remaining Arguments Go to Weight Not Admissibility**

Defendant contends that the Court should exclude the customer complaint logs under Rule 403 because they lack probative value and are unfairly prejudicial.  But the probative value of this evidence

1   is clear.  Defendant's scheme to defraud patients cast an extremely wide net, with Theranos marketing

2   itself to hundreds of thousands of customers and holding its tests out as accurate and reliable.

3   Thousands of individuals patronized Theranos based on the fraudulent representations disseminated

4   under Defendant's control.  When Theranos began offering its tests to the public, doctors and patients

5   received questionable, inconsistent, or impossible results suggesting accuracy and reliability problems

6   with Theranos's testing.  When those customers—now victims of Defendant's fraud—contacted

7   Theranos regarding those results, cases were frequently elevated to Defendant herself.  At trial, the

8   evidence will show that Defendant shaped Theranos's response to those complaints, prioritizing the

9   company's reputation over patient safety.  The complaints logs themselves are thus important evidence

10  in the case, as they constitute irrefutable evidence that Defendant was on notice about the shortcomings

11  in Theranos's technology.  The complaint logs also explain further actions Defendant took in

12  furtherance of the fraud.  To the extent Defendant believes that the information reflected in the

13  complaint logs is false, she and her lawyers are free to advance that argument at trial.  But that argument

14  goes to the weight the jury should assign the logs, not their admissibility.  While Defendant is dismissive

15  of these materials now and claims that they lack probative value, she and her employees at Theranos

16  viewed them as important sources of information when the company was in operation.

17      Defendant's claim that the logs are confusing or misleading is similarly unpersuasive.  Like

18  much of the evidence in this case, the jury's full understanding of the logs will require some guidance

19  from counsel and knowledgeable witnesses.  To the extent Defendant is worried about the jury drawing

20  improper inferences from the content of these materials, that risk can be mitigated through appropriate

21  attorney argument and instruction from the Court if necessary.

22      Defendant's attempts to screen this evidence from the jury are reminiscent of Theranos's

23  reluctance to give complaint logs to FDA in 2015.  During the agency's inspection that year, an

24  inspector reported running into "resistance regarding customer complaints. . . . I kept pushing Sunny to

25  show me an example of the Customer Service complaint log. . . . He, and Lisa Barclay (the ex-Chief of

26  Staff for [FDA Commissioner] Margaret Hamburg) initially told me I had no jurisdiction to see this log,

27  but . . . they relented and said that they will give me 'a sample.'  When I pushed to see the entire log,

28

they told me that it is thousands of complaints . . . ."  ECF No. 586-3 at 3-4 (Ex. 49).  Similarly, Defendant's motion seeks to keep hidden the evidence that shows she was on notice regarding the flaws in Theranos's clinical tests since it launched those services.  The fact that this evidence is inculpatory does not make it unfairly prejudicial or confusing.  Given the high probative value of this evidence as a whole, it easily passes the requirements of Rule 403.  *See United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir.1995) ("Under the terms of the rule, the danger of prejudice must not merely outweigh the probative value of the evidence, but substantially outweigh it."); *United States v. Patterson*, 819 F.2d 1495, 1505 (9th Cir.1987) (stating that Rule 403 is "an extraordinary remedy to be used sparingly").

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's motion.

DATED:  January 8, 2021

Respectfully submitted,

STEPHANIE M. HINDS
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515

_/s/ John C. Bostic_____
JOHN C. BOSTIC
JEFF SCHENK
ROBERT S. LEACH
VANESSA BAEHR-JONES
Assistant United States Attorneys

GOVT OPP TO MOT RE CUSTOMER SERVICE
SPREADSHEETS
18-CR-00258 EJD                    8