1  JOHN D. CLINE (CA State Bar No. 237759)
   600 Stewart Street, Suite 400
2  Seattle, WA 98101
   Telephone: (360) 320-6435
3  Email: cline@johndclinelaw.com

4  KEVIN M. DOWNEY (Admitted Pro Hac Vice)
   LANCE A. WADE (Admitted Pro Hac Vice)
5  AMY MASON SAHARIA (Admitted Pro Hac Vice)
   KATHERINE TREFZ (CA State Bar No. 262770)
6  WILLIAMS & CONNOLLY LLP
   680 Maine Ave. S.W.
7  Washington, D.C. 20024
   Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
8  Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

9  Attorneys for Defendant ELIZABETH A. HOLMES

10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

14
   UNITED STATES OF AMERICA,              )  Case No. CR-18-00258-EJD
15                                        )
            Plaintiff,                    )  **MS. HOLMES' REPLY IN SUPPORT OF**
16                                        )  **MOTION FOR MODIFICATION OF**
        v.                                )  **SENTENCE PURSUANT TO 18 U.S.C.**
17                                        )  **§ 3582(c)(2) AND UNITED STATES**
   ELIZABETH HOLMES and                   )  **SENTENCING GUIDELINES AMENDMENT**
18 RAMESH "SUNNY" BALWANI,                )  **821**
                                          )
19          Defendants.                   )  **[FILED PARTIALLY UNDER SEAL;**
                                          )  **REDACTED VERSION FILED PUBLICLY]**
20                                        )
                                          )  Hon. Edward J. Davila
21                                        )
                                          )
22 _____)

23

24

25

26

27

28

MS. HOLMES' REPLY ISO MOTION FOR MODIFICATION OF SENTENCE PURSUANT TO 18
U.S.C. § 3582(c) AND UNITED STATES SENTENCING GUIDELINES AMENDMENT 821
CR-18-00258 EJD

## <u>TABLE OF CONTENTS</u>

I.    MS. HOLMES QUALIFIES FOR THE ZERO-POINT OFFENDER
      ADJUSTMENT. ..................................................................................................2

      A.    The Government Misunderstands the Legal Standard..............................2

      B.    Ms. Holmes Did Not Cause Any Investor "Substantial Financial
            Hardship."................................................................................................5

II.   18 U.S.C. § 3553(a) SUPPORTS APPLICATION OF THE ADJUSTMENT. ..................7

      A.    The Government Ignores Ms. Holmes' Impeccable Incarceration
            Record and Fails to Demonstrate Risk of Recidivism. ............................8

      B.    A 108-Month Sentence Adequately Serves Deterrence.........................12

      CONCLUSION............................................................................................................13

# TABLE OF AUTHORITIES

## CASES

*United States v. Adelson*, 441 F. Supp. 2d 506 (S.D.N.Y. 2006) ................................................ 12

*United States v. Bentley*, 2024 WL 3796181 (S.D. Tex. Aug. 13, 2024) ................................... 4

*United States v. Cheng*, 2025 WL 573767 (S.D.N.Y. Feb. 21, 2025) ....................................... 4

*United States v. Chiu*, 2024 WL 4451829 (S.D.N.Y. Oct. 9, 2024) ........................................... 4

*United States v. Chung*, 2024 WL 4609597 (N.D. Cal. Oct. 29, 2024) ..................................... 4

*United States v. George*, 949 F.3d 1181 (9th Cir. 2020) ..................................................... 3, 4

*United States v. Gowing*, 2024 WL 3607112 (S.D.N.Y. July 30, 2024) .................................... 4

*United States v. Hanson*, 2024 WL 2781065 (D.N.D. May 30, 2024) ....................................... 4

*United States v. Ndukwe*, 2024 WL 3498595 (S.D.N.Y. July 22, 2024) .................................... 5

*United States v. Pagartanis*, 2024 WL 2111544 (E.D.N.Y. May 10, 2024) .............................. 4

*United States v. Petty*, 982 F.2d 1365 (9th Cir. 1993) ........................................................ 6

*United States v. Pioch*, 2024 WL 2020296 (N.D. Ohio May 7, 2024) ...................................... 5

*United States v. Reid*, 2024 WL 4479872 (S.D. Cal. Oct. 11, 2024) ......................................... 5

*United States v. Rudden*, 2025 WL 1114640 (D. Colo. Apr. 15, 2025) ..................................... 4

*United States v. Spitzer*, 2025 WL 81348 (N.D. Ill. Jan. 13, 2025) .......................................... 4

*United States v. Tavberidze*, 2025 WL 826917 (S.D.N.Y. Mar. 14, 2025) ............................... 9

*United States v. Washington*, 235 F.3d 438 (9th Cir. 2000) .................................................. 7

*United States v. Zogheib*, 2024 WL 3202975 (D. Nev. June 26, 2024) ..................................... 5

## STATUTES

18 U.S.C. § 3553 .................................................................................................... *passim*

U.S.S.G. § 2B1.1 ............................................................................................................ 3, 4

U.S.S.G. § 4C1.1 ..................................................................................................... 1, 2, 3, 8

## OTHER AUTHORITIES

"Everything we know about Haemanthus, the blood-testing startup from Elizabeth Holmes's partner,"
*Fortune* (May 12, 2025), *available at* https://www.fastcompany.com/91332711/what-is-haemanthus-blood-testing-company-from-elizabeth-holmes-partner ....................................................... 11

MS. HOLMES' REPLY ISO MOTION FOR A MODIFICATION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(2) AND UNITED STATES SENTENCING GUIDELINES AMENDMENT 821
CR-18-00258 EJD

ii

"Prison Reform: Reducing Recidivism by Strengthening the Federal Bureau of Prisons" (updated June 5, 2025), https://www.justice.gov/archives/prison-reform ........................................................ 10

Beatrice Nolan, "'This is not Theranos 2.0': Elizabeth Holmes' partner is the CEO behind new blood-testing startup," *Fortune* (May 12, 2025), *available at* https://fortune.com/2025/05/12/theranos-elizabeth-holmes-billy-evans-haemanthus-blood-testing-startup/ ........................................................ 11

haemanthus, X (May 11, 2025, 3:12 PM), https://x.com/haemanthusinc/status/1921644626085024047 11

Richard Frase, *Punishment Purposes*, 58 Stanford L. Rev. 67 (2005) ...................................................... 12

Sentencing Guidelines for the United States Courts, 88 Fed. Reg. 60534 (Sept. 1, 2023).................. 1, 13

1       Ms. Holmes seeks a straightforward application of the retroactive zero-point offender adjustment

2 under § 4C1.1 of the Sentencing Guidelines.  Since May 2023, she has been serving her 135-month

3 sentence and paying restitution in expectedly small amounts, consistent with her financial status.  She is

4 a quintessential candidate for the adjustment: she qualifies, has a perfect record during the 784 days she

5 has spent in prison to date, and—even with an adjustment—faces a sentence and notoriety that ensure

6 there will never be an opportunity for recidivism and that advance deterrence goals.  This motion simply

7 seeks the application of an amendment to the Sentencing Guidelines for which she plainly qualifies, in a

8 circumstance where the § 3553(a) analysis has inured to her benefit since her sentencing in November

9 2022.  By applying its amendment retroactively, the Sentencing Commission has made a policy

10 determination that the original Guideline range was too high for qualifying zero-point offenders.  *See* 88

11 Fed. Reg. 60534, 60536 (Sept. 1, 2023) (discussing reasons for the amendment).  Ms. Holmes seeks

12 precisely the relief the Sentencing Commission contemplated; just as Ms. Holmes was sentenced to the

13 low end of her original Guideline range, she requests the Court sentence her to the low end of her

14 revised Guideline range, 108 months.

15       The government's Opposition to Ms. Holmes' motion is incorrect on the law, improperly holds

16 Ms. Holmes' exercise of her constitutional rights against her, and unfairly twists her positive attributes

17 into a risk of recidivism.

18       As to eligibility: Every investor who could plausibly be a victim represented they could lose the

19 entirety of their investment without impairing their financial condition, and there is no credible evidence

20 that any investor (whether victim or not) suffered substantial financial hardship.  Given the kinds of

21 investors who were invited to invest in Theranos, the government has never argued that this case

22 involves the type of hardship that would preclude application of § 4C1.1.  Its belated invocation of

23 hardship is unsupported.

24       With respect to the § 3553(a) factors, the changed circumstances only favor Ms. Holmes, and

25 counsel in favor of an adjustment.  The government ignores Ms. Holmes' impeccable prison record.

26 Instead, it suggests Ms. Holmes' exercise of her constitutional rights should preclude application of the

27 adjustment and speculates about recidivism in the face of plain circumstances that preclude any such

28 MS. HOLMES' REPLY ISO MOTION FOR A MODIFICATION OF SENTENCE PURSUANT TO 18
U.S.C. § 3582(c)(2) AND UNITED STATES SENTENCING GUIDELINES AMENDMENT 821
CR-18-00258 EJD

1   conduct.  These arguments are either backwards—reflecting the view that incarcerated individuals who

2   desire to contribute to their community and society are inherently suspect for recidivism—or reflect a

3   failure of investigation.  The Court should reject these arguments.[1]

4   **I.      MS. HOLMES QUALIFIES FOR THE ZERO-POINT OFFENDER ADJUSTMENT.**

5          The government asks the Court to find that Ms. Holmes does not qualify for the zero-point

6   offender adjustment because Ms. Holmes supposedly "personally caused substantial financial hardship."

7   ECF 1796 at 1.  This argument—which the government has never before advanced—misunderstands the

8   law and ignores the facts.

9          **A.      The Government Misunderstands the Legal Standard.**

10         The government is wrong that the Court can focus on the overall restitution amount and need not

11  find that Ms. Holmes personally caused substantial financial hardship to any individual victim.  Section

12  4C1.1(a)(6) applies when a court finds that the defendant personally caused substantial financial

13  hardship to at least one victim through her offense conduct.  An analysis of the Guideline demonstrates

14  that does not apply here.

15         Start with the Guideline itself.  Section 4C1.1(b)(3) provides that, when considering whether the

16  defendant personally caused "substantial financial hardship," the Court "shall consider, among other

17  things, the non-exhaustive list of factors provided in Application Note 4(F) of the Commentary to §

18  2B1.1."  Application Note 4(F) focuses on financial hardships that *individual victims* may have suffered,

19  such as "becoming insolvent," "filing for bankruptcy," "suffering substantial loss of a retirement,

20  education, or other savings or investment fund," "making substantial changes to his or her employment,

21  such as postponing his or her retirement," "making substantial changes to his or her living

22  arrangements," and "suffering substantial harm to his or her ability to obtain credit."

23

24

---

25         [1] The government implies that the timing of Ms. Holmes' motion is somehow suspect.  The
    procedural history of this case makes that timing obvious: When the zero point offender adjustment was
26  implemented, Ms. Holmes was serving her sentence and her case was on appeal.  Because the appeal
    challenged her conviction and this motion would not have led to her release while her case was on
27  appeal given the length of her sentence, it did not make sense to burden the Court or the Probation
    Office with this motion before the Ninth Circuit had ruled.

28  MS. HOLMES' REPLY ISO MOTION FOR A MODIFICATION OF SENTENCE PURSUANT TO 18
    U.S.C. § 3582(c)(2) AND UNITED STATES SENTENCING GUIDELINES AMENDMENT 821
    CR-18-00258 EJD
                                    2

1    Application Note 1 provides that the "application of subsection (a)(6) is to be determined

2    independently of the application of subsection (b)(2) of § 2B1.1." Application Note 1 of the

3    Commentary to § 4C1.1.  The government suggests that this language supports an expansive reading of

4    the section that would allow courts to consider total loss amount, the number of victims, or some other

5    undefined considerations.  Not so.  The application note does not change the focus on individual

6    victims' hardship.  Rather, Application Note 1 is better read to account for at least two differences: 1)

7    the fact that § 4C1.1 requires that the defendant have "*personally* cause[d]" the substantial financial

8    hardship while § 2B1.1(b)(2) is implicated where "the *offense* resulted in" substantial financial hardship;

9    and 2) the fact that § 2B1.1(b)(2)(A) provides for alternative bases for an enhancement unrelated to

10   hardship (i.e., the number of victims and use of mass marketing) which do not bear on the applicability

11   of § 4C1.1.

12       Neither the language of the Guideline nor the Commentary suggests that an overall assessment of

13   loss or restitution would support an exclusion under § 4C1.1(a)(6) without a finding of any victim's

14   substantial financial hardship.  If the Sentencing Commission meant for § 4C1.1(a)(6) to be determined

15   by loss amount, there is a much more direct way to do so:  Instead of (or in addition to) using the

16   language of "substantial financial hardship" and referring to Application Note 4(F), the Sentencing

17   Commission could have made a certain loss amount as calculated pursuant to § 2B1.1(b)(1) a basis for

18   exclusion under § 4C1.1(a).  Likewise with respect to the number of victims: if the Sentencing

19   Commission intended for that to be a consideration, it could have directly said so as it has done in other

20   places in the Guidelines.  *E.g.*, U.S.S.G. § 2B1.1(b)(2)(A)(i) (enhancement for offense involving "10 or

21   more victims" regardless of financial hardship).

22       The caselaw reinforces the focus on individual hardship.  *United States v. George*, 949 F.3d 1181

23   (9th Cir. 2020), on which the government relies, is particularly instructive.  Focusing on the meaning of

24   the phrase "substantial financial hardship"—the phrase that is in both § 2B1.1(b)(2) and § 4C1.1(a)(6)—

25   the court noted the importance of the words "substantial" and "hardship."  *Id.* at 1184-85.  As the court

26   explained: "Significance and substantiality are relative concepts: to satisfy section 2B1.1(b)(2), financial

27   hardship must be substantial in comparison to something else. *The most natural point of comparison is*

28   MS. HOLMES' REPLY ISO MOTION FOR A MODIFICATION OF SENTENCE PURSUANT TO 18
     U.S.C. § 3582(c)(2) AND UNITED STATES SENTENCING GUIDELINES AMENDMENT 821
     CR-18-00258 EJD

1   *the financial condition of the victim.*"  *Id.* at 1185 (citation omitted) (emphasis added).  Thus, the focus

2   is not on whether a particular amount is considered substantial as an objective matter; rather, "our

3   inquiry must consider how the loss affects the victim," which "requires a focus on the victims'

4   individual circumstances."  *Id.*  In *George*, the district court had properly found substantial financial

5   hardship to victims who had lost homes, filed for bankruptcy, borrowed money to avoid foreclosure, or

6   had their credit affected.  *Id*. at 1186; *see* U.S.S.G. § 2B1.1, cmt. Application Note 4(F).

7           No case cited by the government supports its argument that total loss is sufficient to find that

8   "substantial financial hardship" resulted.  Rather, the cases include clear findings that at least one victim

9   suffered "substantial financial hardship" personally caused by the defendant (or findings that the

10  defendant otherwise did not qualify for the adjustment and thus the hardship question was not

11  important).  *See, e.g.*, *United States v. Gowing*, 2024 WL 3607112, at *2 (S.D.N.Y. July 30, 2024)

12  (victim declared bankruptcy); *United States v. Cheng*, 2025 WL 573767, at *3 (S.D.N.Y. Feb. 21, 2025)

13  (victims "attested" that "the resulting losses had [a] devastating impact on their lives and livelihoods,

14  including by preventing individuals from purchasing family homes and obtaining credit, forcing

15  companies to lay off employees, and driving others to the brink of collapse" (citations omitted)); *United*

16  *States v. Chiu*, 2024 WL 4451829, at *1 (S.D.N.Y. Oct. 9, 2024) (two victims were at least 74 years old

17  and at least one was dependent on the defendant to manage her finances); *United States v. Bentley*, 2024

18  WL 3796181, at *1 (S.D. Tex. Aug. 13, 2024) (defendant was not eligible because he was a 1-point

19  offender, and also there was a specific finding that he caused substantial financial hardship to a

20  multitude of individuals); *United States v. Hanson*, 2024 WL 2781065, at *5 (D.N.D. May 30, 2024)

21  (defendant caused substantial financial hardship to family farmers); *United States v. Pagartanis*, 2024

22  WL 2111544, at *2 (E.D.N.Y. May 10, 2024) (vulnerable victims, disqualifying under (a)(9)); *United*

23  *States v. Rudden*, 2025 WL 1114640, at *2 (D. Colo. Apr. 15, 2025) (court had found defendant caused

24  substantial hardship to at least five victims at sentencing); *United States v. Spitzer*, 2025 WL 81348, at

25  *3 (N.D. Ill. Jan. 13, 2025) (victims "reported that they faced financial ruin as a result of their losses,

26  could not retire, or had to return to work at an advanced age"); *United States v. Chung*, 2024 WL

27  4609597, at *3 (N.D. Cal. Oct. 29, 2024) (at sentencing, victims testified they lost retirement savings or

28  MS. HOLMES' REPLY ISO MOTION FOR A MODIFICATION OF SENTENCE PURSUANT TO 18
    U.S.C. § 3582(c)(2) AND UNITED STATES SENTENCING GUIDELINES AMENDMENT 821
    CR-18-00258 EJD

1    entire life savings); *United States v. Zogheib*, 2024 WL 3202975, at *10 (D. Nev. June 26, 2024)

2    (defendant had five criminal history points); *United States v. Pioch*, 2024 WL 2020296, at *1 & n.1

3    (N.D. Ohio May 7, 2024) (court had found substantial financial hardship at sentencing where victim was

4    employed in marginal low-wage jobs and needed money stolen from estate to continue his education and

5    defendant, a lawyer who had abused position of trust, had 1 week left in sentence).[2]

6    **B.    Ms. Holmes Did Not Cause Any Investor "Substantial Financial Hardship."**

7         Any argument that Ms. Holmes caused any Theranos investor (or a collection thereof)

8    "substantial financial hardship" within the meaning of the Guideline has no record support.  The

9    government has *never* previously argued—either to the Probation Office or to the Court—that Ms.

10   Holmes caused any Theranos investor substantial financial hardship.  The word "hardship" does not

11   appear in the government's sentencing memorandum, and was not uttered at the sentencing hearing.

12   This is for good reason: Given the risk involved with the investment, Theranos only sought investments

13   from investors who would suffer no hardship from a loss of the entirety of the investment.  Every

14   Theranos investor who invested during the C-1 and C-2 rounds represented to Theranos before they

15   invested that they recognized the speculative nature of the investment and that the investor's financial

16   condition would *not be impaired* if the investor were to suffer the complete loss of the investment.  The

17   C-1 investment agreement, which the investors who were the subject of hung (and later dismissed)

18   counts 3 through 5 signed, provided that the investor "can bear the economic risk of such Investor's

19   investment and is able, *without impairing such Investor's financial condition*, to hold the Shares and the

20   Conversion Shares for an indefinite period of time and *to suffer a complete loss of such Investor's*

21   *investment*."  Trefz Decl., Ex. 1 (TX 3530 § 4.4) (emphasis added).  The C-2 investment agreement,

22   signed by the investors who were the subject of convicted counts 6-8, provided the same representation.

23   Trefz Decl., Ex. 2 (TX 1505 § 4.4).  Investors reaffirmed this principle in the May 15, 2017 Exchange

24

25
26   [2] Other examples cited by the government are unhelpful to it for other reasons. *United States v. Reid*, 2024 WL 4479872, at *1-2 (S.D. Cal. Oct. 11, 2024) (custodial sentence was complete and defendant had a below-Guidelines sentence); *United States v. Ndukwe*, 2024 WL 3498595, at *2
27   (S.D.N.Y. July 22, 2024) (court entertained one argument why there would be "substantial financial hardship," but ultimately assumed defendant *would* qualify).

28   MS. HOLMES' REPLY ISO MOTION FOR A MODIFICATION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(2) AND UNITED STATES SENTENCING GUIDELINES AMENDMENT 821 CR-18-00258 EJD

1   and Release Agreement. ECF 1728-2 at 160, § 3.5 (holder of the stock "represents that it is able,

2   without materially impairing its financial condition, to hold the Adjusted Shares for an indefinite period

3   of time and to suffer a complete loss of investment"). Unlike many fraud cases, *see supra* pp. 3-5 (case

4   citations), this has never been a case about causing substantial financial hardship to any investor. The

5   government's attempt to reframe it as such is suspect.

6          The government makes no argument that any investor suffered financial hardships akin to those

7   identified in Application Note 4(F)—nor could it. Instead, it stretches to make three different misguided

8   arguments.

9          First, it points to a C-1 investor who signed the Stock Purchase Agreement (TX 3530) and the

10  May 2017 agreement who asked the government to convey that "his investment in Theranos was 15% of

11  his personal net worth at the time." ECF 1796-1 (Volkar Decl.) ¶ 2. Ms. Holmes was not convicted of

12  defrauding this investor and in its sentencing order the Court did not count this investor among Ms.

13  Holmes' victims. ECF 1712 at 6.[3] Neither this investor's victim impact statement nor any other

14  implicates any factor in Application Note 4(F) of the Commentary to § 2B1.1. It is not even clear what

15  this statement means or how the investor arrived at this calculation—that is, whether it was based on the

16  time of the investment, the assumed value of Theranos at its peak, desired return, or whether the investor

17  instead misstated his financial condition when he made the investment and again when he signed the

18  2017 agreement. *See* ECF 1796-1 ¶ 2; *see also* Trefz Decl., Ex. 3.

19         Second, the government alludes to the idea that the Court might find hardship because of

20  investments that were *not* made in other companies by the hedge fund PFM. This speculative and

21  undeveloped argument is not grounded in the kind of reliable information the Court should consider in

22  making factual determinations in connection with sentencing. *See United States v. Petty*, 982 F.2d 1365,

23  1369 (9th Cir. 1993) (sentencing should be based on reliable evidence). It especially would be

24

25         [3] Ms. Holmes understands from the government that it refers to ████████████████

26  ████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████

28  MS. HOLMES' REPLY ISO MOTION FOR A MODIFICATION OF SENTENCE PURSUANT TO 18
    U.S.C. § 3582(c)(2) AND UNITED STATES SENTENCING GUIDELINES AMENDMENT 821
    CR-18-00258 EJD

problematic to find the lack of investment in other companies constitutes "substantial financial hardship" in this case, given the types of speculative investments in new technologies funds like PFM made.  *See* ECF 1642 at 49-50 (describing the success rates and expectations in venture investing).

Third, the government notes that at sentencing it sought Guidelines enhancements that would have disqualified Ms. Holmes from application of this adjustment had they been applied, but the Court did not apply them.  It is unclear how this helps the government.  This motion is not an opportunity for the Court to reassess its earlier Guidelines calculation more broadly.  The Court rightly did not apply those requested enhancements—one of which was based on counts for which Ms. Holmes was acquitted—and the government did not challenge the Court's Guidelines calculation on appeal.  Those determinations are law of the case.  *See United States v. Washington*, 235 F.3d 438, 441 (9th Cir. 2000).

*                    *                    *

Ms. Holmes did not cause "substantial financial hardship" to any investor.  There is no dispute that no other exclusion to § 4C1.1 applies.  Ms. Holmes meets the criteria delineated by the Sentencing Commission.  The Court should find Ms. Holmes eligible for the adjustment and apply the amendment.

## II.    18 U.S.C. § 3553(a) SUPPORTS APPLICATION OF THE ADJUSTMENT.

As Ms. Holmes noted in her Motion, the § 3553(a) factors support application of the zero-point offender adjustment.  Since the Court's § 3553(a) analysis in November 2022, those factors have either stayed the same (such as the nature and circumstances of the offense) or changed in Ms. Holmes' favor (such as the Guidelines range, *see* § 3553(a)(4), and the policy statements of the Sentencing Commission, § 3553(a)(5)).  Ms. Holmes' demonstrated commitment to BOP's recidivism reduction programming and helping her fellow prisoners during her incarceration also reflects favorably on her personal characteristics (§ 3553(a)(1)) as well as her respect for the law and the lack of any risk for recidivism (§ 3553(a)(2)(A), (C)).

The government's approach to the § 3553(a) factors is troubling.  It barely acknowledges Ms. Holmes' incarceration record.  Much of the government's opposition relies on factors that have not changed, such as when it rehashes its allegations of the offense.  It suggests Ms. Holmes will recidivate because she has exercised her constitutional rights and continued to engage in the legal process while

MS. HOLMES' REPLY ISO MOTION FOR A MODIFICATION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(2) AND UNITED STATES SENTENCING GUIDELINES AMENDMENT 821 CR-18-00258 EJD

7

serving her sentence.  It flips an investor's letter that urges compassion on its head, claiming it (along with the letters the Court received in connection with sentencing that show Ms. Holmes' character and commitment to service) shows Ms. Holmes will be able to commit additional crimes.  And it brazenly and inaccurately, with apparently no investigation, suggests Ms. Holmes may be involved in her partner's new company.  The Court should not credit these arguments.

**A.    The Government Ignores Ms. Holmes' Impeccable Incarceration Record and Fails to Demonstrate Risk of Recidivism.**

The government ignores Ms. Holmes' unimpeachable record during her twenty-five months of incarceration to date.  Her conduct while incarcerated is the only material change in circumstances since the Court last considered Ms. Holmes' future.  That update is indisputably positive in terms of the goals of sentencing: she has sought out opportunities to serve her fellow prisoners and has participated in all of the rehabilitative programs her facility offers.  Though her financial condition obviously has not improved in prison, she has consistently made expectedly small contributions to restitution.  It is hard to imagine how—other than through these kinds of actions—Ms. Holmes could show her remorse and her commitment to, as she said at sentencing, making a positive impact at the individual level.  Sentencing Tr. 123.  The evidence-based tool implemented by BOP at the direction of the First Step Act identifies Ms. Holmes as extremely unlikely to recidivate, and BOP has classified her as appropriate for community custody.  BOP notes:

Trefz Decl., Ex. 4 at 4.

Instead, the government troublingly takes the opposite approach: it hypothesizes that Ms. Holmes is *more likely to recidivate* because (1) she has exercised her constitutional rights while serving her sentence; (2) over 130 people wrote letters supporting her at sentencing and in June 2025 one of the victims expressed the view to the prosecution team that she will never commit crimes again and a shorter sentence would be better; (3) the media continue to be interested in her as the Court witnessed at

MS. HOLMES' REPLY ISO MOTION FOR A MODIFICATION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(2) AND UNITED STATES SENTENCING GUIDELINES AMENDMENT 821 CR-18-00258 EJD

1  trial; and (4) the media speculates about whether her partner's company is a new version of Theranos.

2  The first two arguments portray the situation backwards, the third misses the point, and the fourth is

3  simply wrong and appears to have been made without investigation.

4      *First*, the government appears to theorize that Ms. Holmes will commit more crimes because she

5  maintained her innocence,[4] has legal representation, has filed a legal motion available to her, and has

6  ideas for how to improve the criminal justice system through legislation.  The suggestion that Ms.

7  Holmes should be denied application of this new adjustment because she has exercised her constitutional

8  rights should not be countenanced.  It is troubling that the government would take such a position.  *See*

9  ECF 1796 at 15.[5]  And it is even more troubling when considered in context: Ms. Holmes has taken

10  these actions while complying with court orders and serving her sentence.  This behavior evinces a

11  respect for the law and desire to work within its bounds and processes, not a desire to break it.

12      The government also recycles an old tactic—which the Court rightly rejected in connection with

13  the Motion for Release Pending Appeal—when it suggests that Ms. Holmes has shown a desire to

14  recidivate because she is still interested in the scientific concepts she spent her early adulthood thinking

15  about.  ECF 1721 at 7 (arguing Ms. Holmes' desire to continue inventing shows she is a danger to the

16  community); ECF 1757 at 2-3 (rejecting argument).  To be clear, Ms. Holmes was convicted of making

17  material misstatements in seeking investments for her startup—not for the development of the many

18  patented inventions discovered by her company.  Ms. Holmes has always been open about her desire to

19  continue thinking about the laudable scientific goals that inspired her work—she proactively noted it at

20  trial, with Probation, and at sentencing.  A desire to invent is not at all a crime and is not recidivism.

21

22      [4] The government repeatedly notes that Ms. Holmes has not "accepted responsibility."  ECF
1796 at 14, 17.  There can be no question that Ms. Holmes has taken full responsibility for all failings

23  while at Theranos, and has expressed her deep regret for any harm those failings caused.  Sentencing Tr.
121-22.  The fact that she maintains she did not commit fraud is not mentioned in § 4C1.1 and it should

24  not be relevant to § 3553(a).  *Cf. United States v. Tavberidze*, 2025 WL 826917, at *1 (S.D.N.Y. Mar.
14, 2025).  To be clear, Ms. Holmes does not ask the Court to reconsider its decision not to apply §

25  3E1.1; but her belief in her innocence should not be used to argue that she is more likely to recidivate.

26      [5] Undersigned counsel presumes that the government does not intend to represent to the Court
anything about Ms. Holmes' financial status, payment of legal services, or that Ms. Holmes should not

27  have access to counsel, but it is concerning that the government would include this statement in its brief.
The Court has information as to Ms. Holmes' financial status through the originally-filed PSR; her
financial condition has not improved since she was incarcerated.

28  MS. HOLMES' REPLY ISO MOTION FOR A MODIFICATION OF SENTENCE PURSUANT TO 18
U.S.C. § 3582(c)(2) AND UNITED STATES SENTENCING GUIDELINES AMENDMENT 821
CR-18-00258 EJD

1    *Second*, the government argues that Ms. Holmes will have the opportunity to recidivate because

2    many people believe she has good qualities and will not commit future offenses.  The government points

3    to the over 130 letters submitted in support of Ms. Holmes at sentencing and argues that the fact that Ms.

4    Holmes still has relationships despite her conviction gives her the means to recidivate.  This dubious

5    argument has it exactly backwards: as the Department of Justice recognizes, strong personal

6    relationships, including family relationships, help to foster an incarcerated individual's rehabilitation.

7    *See* "Prison Reform: Reducing Recidivism by Strengthening the Federal Bureau of Prisons" (updated

8    June 5, 2025), https://www.justice.gov/archives/prison-reform ("Research shows that close and positive

9    family relationships during incarceration reduce recidivism, improve an individual's likelihood of

10   finding and keeping a job after prison, and ease the harm to family members separated from their loved

11   ones.").  This, too, is a recycled argument that the Court has previously rightly rejected.  ECF 1721 at 7

12   (arguing that Ms. Holmes is a danger to the community based in part on the letters of support); ECF

13   1757 at 2-3 (rejecting argument).  Those letters primarily discuss each individual's personal experience

14   with Ms. Holmes' personal qualities as a caring and compassionate friend and coworker, dedicated

15   parent, hardworking member of society, and a person who has had a desire to make a difference and the

16   service she did accordingly.  *See* ECF 1642 at 1-2, 9-10, 19-20, 21-27; ECF 1642-3. The idea that the

17   government would argue that such qualities make her more likely to reoffend defies research, policy,

18   and common sense.

19   The government doubles down on this flawed argument with respect to an investor who

20   responded to the prosecution team's inquiry about Ms. Holmes' motion.  After the prosecution team

21   reached out to investors seeking input on this motion, one of the investors whom the Court counted as a

22   victim in its sentencing order responded that the investor had suffered no financial hardship (in fact,

23   quite the opposite), expressed the view that Ms. Holmes would likely never commit crimes again, and

24   urged the government to show compassion.  Trefz Decl., Ex. 3.  The letter in no way supports the

25   government's argument.

26   *Third*, the government's argument that the press interest in Ms. Holmes will give her the

27   opportunity to commit a similar crime ignores reality. The Court is well aware that press interest in this

28   MS. HOLMES' REPLY ISO MOTION FOR A MODIFICATION OF SENTENCE PURSUANT TO 18
U.S.C. § 3582(c)(2) AND UNITED STATES SENTENCING GUIDELINES AMENDMENT 821
CR-18-00258 EJD

1    case has been substantial—and, for almost a decade, generally unflattering to Ms. Holmes.  The articles

2    the government cites highlight that point: those national publications emphasize her conviction and call

3    her a fraud.  Because of her notoriety, substantial scrutiny will undoubtedly attend any of Ms. Holmes'

4    future endeavors.

5         *Fourth*, her partner's business venture is irrelevant here.  Ms. Holmes is not working with

6    Haemanthus, a technology company that Billy Evans co-founded that draws on different technologies

7    than Theranos.  *See* haemanthus, X (May 11, 2025, 3:12 PM), https://x.com/haemanthusinc/status/

8    1921644626085024047 ("Elizabeth Holmes has zero involvement in Haemanthus.").  The company

9    made public statements to this effect on May 11, 2025, at the time of the *New York Times* and *Guardian*

10   articles the government cites, and many articles that followed incorporated those statements.  *See, e.g.*,

11   Beatrice Nolan, "'This is not Theranos 2.0': Elizabeth Holmes' partner is the CEO behind new blood-

12   testing startup," *Fortune* (May 12, 2025), *available at* https://fortune.com/2025/05/12/theranos-

13   elizabeth-holmes-billy-evans-haemanthus-blood-testing-startup/; "Everything we know about

14   Haemanthus, the blood-testing startup from Elizabeth Holmes's partner," *Fortune* (May 12, 2025),

15   *available at* https://www.fastcompany.com/91332711/what-is-haemanthus-blood-testing-company-

16   from-elizabeth-holmes-partner.  The government did not reference the company's response or attach any

17   of the articles that referenced the company's response—of which there are many.  Nor did it reach out to

18   Ms. Holmes' counsel, Mr. Evans, or others at Haemanthus to understand whether the allegations it

19   repeats had any basis in reality.  It appears the government conducted no investigation before making

20   this argument in its brief.

21        The fact that Ms. Holmes is not involved in that company should be obvious.  Any suggestion

22   otherwise defies logic and misunderstands how intensely Ms. Holmes is monitored at FPC Bryan—

23   nonprivileged correspondence, video calls, and phone calls are all monitored by BOP staff, have been

24   for years, and will continue to be for years in the future.[6]  Ms. Holmes has not been secretly working

25

26

27        [6] Because of security threats to her and the enhanced publicity surrounding her incarceration, Ms.
     Holmes is designated for Central Inmate Monitoring, which involves enhanced monitoring.

28   MS. HOLMES' REPLY ISO MOTION FOR A MODIFICATION OF SENTENCE PURSUANT TO 18
     U.S.C. § 3582(c)(2) AND UNITED STATES SENTENCING GUIDELINES AMENDMENT 821
     CR-18-00258 EJD

1   with a technology company from her prison cell or raising millions of dollars in investments while

2   incarcerated and under the responsibility of BOP staff.[7]

3       **B.    A 108-Month Sentence Adequately Serves Deterrence.**

4       The government also suggests that—despite the research-based determinations made by the

5   Sentencing Commission—the goals of deterrence will only be achieved by denying Ms. Holmes this

6   adjustment.  With respect to general deterrence, research indicates otherwise.  There is "considerable

7   evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white

8   collar' offenders." *United States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006); *see* Richard

9   Frase, *Punishment Purposes*, 58 Stanford L. Rev. 67, 80 (2005) ("White-collar and regulatory offenders

10  are more likely to be deterred, even by selective enforcement and modest penalties; such offenders have

11  many lawful alternatives and much to lose from being convicted, regardless of the penalty."); *see* ECF

12  1642 at 66-67 (citing research regarding general deterrence).  No one looking at Ms. Holmes' personal

13  circumstances—serving a lengthy prison sentence in the wake of a fraud conviction as her two young

14  children grow up, regardless of whether the amendment is applied—would conclude that hers is a path

15  to be emulated.  The *People* article the government attached highlights that fact.  *See e.g.*, ECF 1796-3

16  at 1 (quoting Ms. Holmes as saying incarceration has been "hell and torture"), 3 ("the tough reality of

17  her life today is a nightmare of her own making").  Personal deterrence has already been achieved: Ms.

18  Holmes stated at sentencing that she would spend the rest of her life trying to make up for her failings at

19  Theranos, and her incarceration record makes clear she is taking that to heart.

20                          *          *          *

21      Ms. Holmes has done everything she can to show her commitment to serving others and

22  bettering herself during her lengthy incarceration.  The Court sentenced Ms. Holmes to a Guidelines

23  sentence.  Retroactive amendment of the Guidelines has reduced her Guidelines range.  In light of the

24

25      [7] The government incorrectly suggests that Ms. Holmes has not been banned from any activity in
    the health care space.  In January 2024, the Department of Health and Human Services Office of the
26  Inspector General "excluded Elizabeth Holmes for 90 years from participation in Federal health care
    programs" as a result of her conviction.  *See* "HHS-OIG Issues Notice of Exclusion to Founder and CEO
27  of Theranos, Inc." (Jan. 19, 2024), https://oig.hhs.gov/newsroom/news-releases-articles/hhs-oig-issues-
    notice-of-exclusion-to-founder-and-ceo-of-theranos-inc/.

28  MS. HOLMES' REPLY ISO MOTION FOR A MODIFICATION OF SENTENCE PURSUANT TO 18
    U.S.C. § 3582(c)(2) AND UNITED STATES SENTENCING GUIDELINES AMENDMENT 821
    CR-18-00258 EJD

                                    12

Sentencing Commission's amendment and the policies it embodies, *see* 88 Fed. Reg. 60536 (discussing reasons for the amendment); *see* 18 U.S.C. § 3553(a)(4)-(5), the Court should find that a reduction in Ms. Holmes' sentence corresponding to the Sentencing Commission's amendment would satisfy § 3553(a)'s charge to impose a sentence that is "sufficient, but not greater than necessary" to meet the goals of sentencing.

## CONCLUSION

For the foregoing reasons, the Court should grant Ms. Holmes' Motion and resentence her to 108 months, the low end of her revised Guideline range.

DATED:  July 23, 2025                          Respectfully submitted,

                                               */s/ Katherine Trefz*
                                               KEVIN DOWNEY
                                               LANCE WADE
                                               AMY MASON SAHARIA
                                               KATHERINE TREFZ
                                               Attorneys for Elizabeth Holmes

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on July 23, 2025 a copy of this filing was delivered via ECF on all counsel

3  of record.

4

5                                             */s/ Katherine Trefz*

6                                             Attorney for Elizabeth Holmes

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MS. HOLMES' REPLY ISO MOTION FOR A REDUCTION OF SENTENCE PURSUANT TO 18
U.S.C. § 3582(c)(2) AND UNITED STATES SENTENCING GUIDELINES AMENDMENT 821
CR-18-00258 EJD