# EXHIBIT 2

# THERANOS, INC.

## SERIES C-2 PREFERRED STOCK PURCHASE AGREEMENT

This Series C-2 Preferred Stock Purchase Agreement (this "**Agreement**") is made by and among Theranos, Inc. a Delaware corporation (the "**Company**"), Elizabeth Holmes (the "**Stockholder Representative**"), and the persons and entities (each, an "**Investor**" and collectively, the "**Investors**") listed on the Schedule of Investors attached hereto as <u>Exhibit A</u> (the "**Schedule of Investors**"), except that certain Investors may not be listed on the Schedule of Investors pursuant to confidentiality agreements entered into between the Company and such Investors, as of February 3, 2014, but are nonetheless parties to this Agreement and referred to herein as Investors.

A.      Pursuant to the Certificate of Designation of Series C-2 Preferred Stock, attached hereto as <u>Exhibit B</u>, (the "**Certificate of Designation**"), the Company is authorized to issue up to 11,764,706 shares of the Company's Series C-2 Preferred Stock (the "**Series C-2 Preferred**").

B.      The Company wishes to sell and the Investors wish to purchase shares of the Series C-2 Preferred.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## SECTION 1

### Authorization, Sale and Issuance of Series C-2 Preferred Stock

1.1      *Authorization.*   The Company has authorized (a) the sale and issuance of up to 11,764,706 shares of Series C-2 Preferred (the "**Shares**"), having the rights, privileges, preferences and restrictions set forth in the Certificate of Designation and (b) the reservation of shares of the Company's Class A Common Stock, $0.0001 par value per share (the "**Class A Common Stock**") for issuance upon conversion of the Shares (the "**Conversion Shares**").

1.2      *Sale and Issuance of Shares.* Subject to the terms and conditions of this Agreement, each Investor agrees, severally and not jointly, to purchase, and the Company agrees to sell and issue to each Investor, the number of Shares set forth in the column designated "Number of Series C-2 Shares" opposite such Investor's name on the Schedule of Investors or as set forth on such Investor's master signature page, at a cash purchase price of at least $17.00 per share (as the case may be, the "**Purchase Price**"). The Company's agreement with each Investor is a separate agreement, and the sale and issuance of the Shares to each Investor is a separate sale and issuance.

-1-

THERANOS, INC. CONFIDENTIAL

## SECTION 2

### Closing Dates and Delivery

2.1    *Closing.*

(a)    The purchase, sale and issuance of the Shares shall take place at one or more closings (each of which is referred to in this Agreement as a "**Closing**"). The initial Closing (the "**Initial Closing**") shall take place at the offices of Theranos, Inc., 1601 S. California Avenue, Palo Alto, California 94304 at 5:00 p.m. local time on Monday, February 3, 2014.

(b)    If less than all of the Shares are sold and issued at the Initial Closing, then, subject to the terms and conditions of this Agreement, the Company may sell and issue at one or more subsequent closings (each, a "**Subsequent Closing**"), held on or before February 28, 2014, up to the balance of the unissued Shares. Any such sale and issuance in a Subsequent Closing shall be on the same terms and conditions as those contained herein, and such persons or entities shall, upon execution and delivery of the relevant signature pages, become parties to, and be bound by, this Agreement, the Amended and Restated Investors' Rights Agreement in substantially the form attached hereto as Exhibit C (the "**Rights Agreement**"), and the Amended and Restated Voting Agreement in substantially the form attached hereto as Exhibit D (the "**Voting Agreement**," and together with this Agreement and the Rights Agreement, the "**Agreements**"), without the need for an amendment to any of the Agreements, and shall have the rights and obligations hereunder and thereunder, in each case as of the date of the applicable Subsequent Closing. Each Subsequent Closing shall take place at such date, time and place as shall be approved by the Company and the Investors representing a majority of the Shares to be sold in such Subsequent Closing.

2.2    *Delivery.* At each Closing, the Company will deliver to each Investor in such Closing a certificate registered in such Investor's name representing the number of Shares that such Investor is purchasing in such Closing against payment of the purchase price therefor as set forth in the column designated "Purchase Price" opposite such Investor's name on the Schedule of Investors, by (i) check payable to the Company, (ii) wire transfer in accordance with the Company's instructions, (iii) cancellation of indebtedness or (iv) any combination of the foregoing. In the event that payment by an Investor is made, in whole or in part, by cancellation of indebtedness, then such Investor shall surrender to the Company for cancellation at the Closing any evidence of indebtedness or shall execute an instrument of cancellation in form and substance acceptable to the Company.

## SECTION 3

### Representations and Warranties of the Company

The Company hereby represents and warrants to the Investors as follows:

3.1    *Organization, Good Standing and Qualification.* The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware. The Company has the requisite corporate power and authority to own and operate its properties and

-2-

THERANOS, INC. CONFIDENTIAL

assets, to carry on its business as presently conducted, to execute and deliver the Agreements, to issue and sell the Shares and the Conversion Shares and to perform its obligations pursuant to the Agreements, the amended and restated certificate of incorporation of the Company (the "**Restated Certificate**") and the Certificate of Designation. The Company is presently qualified to do business as a foreign corporation in each jurisdiction where the failure to be so qualified could reasonably be expected to have a material adverse effect on the Company's business, assets (including intangible assets), liabilities, financial condition, properties or results of operations (a "**Material Adverse Effect**").

    3.2    *Capitalization.*As of February 3, 2014, the authorized capital stock of the Company consisted of 725,000,000 shares of Class A Common Stock, of which approximately 50,844,390 shares were issued and outstanding, 250,658,055 shares of the Company's Class B Common Stock, $0.0001 par value per share (the "**Class B Common Stock**"), all of which were issued and outstanding, and 225,000,000 shares of Preferred Stock, 46,320,045 of which were designated Series A Preferred Stock, all of which were issued and outstanding pursuant to that certain Series A Preferred Stock Financing dated December 17, 2004, January 21, 2005 and February 7, 2005 (the "**Series A Preferred**"), 54,162,965 of which were designated Series B Preferred Stock, all of which were issued and outstanding pursuant to that certain Series B Preferred Stock Financing dated February 3, 2006 (the "**Series B Preferred**"), 58,896,105 of which were designated Series C Preferred Stock, all of which were issued and outstanding pursuant to that certain Series C Preferred Stock Financing dated October 13, 2006, November 3, 2006, November 15, 2006 and December 12, 2006 (the "**Series C Preferred**"), and 43,000,005 of which were designated Series C-1 Preferred, 23,008,367 of which were issued and outstanding pursuant to that certain Series C-1 Preferred Stock Financing dated July 1, 2010, March 28, 2013 and January 14, 2014 (the "**Series C-1 Preferred**"). Upon the effectiveness of the Certificate of Designation, an additional 11,764,706 shares of authorized Preferred Stock will be designated as Series C-2 Preferred, none of which will be issued and outstanding. The Class A Common Stock, the Class B Common Stock, the Series A Preferred, the Series B Preferred, the Series C Preferred, the Series C-1 Preferred and the Series C-2 Preferred shall have the rights, preferences, privileges and restrictions set forth in the Restated Certificate and/or the Certificate of Designation.

    (b)    The outstanding shares have been duly authorized and validly issued in compliance with applicable laws (including applicable federal and state securities laws), and are fully paid and nonassessable.

    (c)    The Company has reserved:

        (i)    the Shares for issuance pursuant to this Agreement;

        (ii)    up to 33,333,335 shares of Series C-1 Preferred Stock for issuance pursuant to the Amended and Restated Series C-1 Stock Purchase Agreement at a purchase price of $15 per share for sales and issuances at any subsequent closing held on or before January 14, 2014;

-3-

THERANOS, INC. CONFIDENTIAL

(iii)    a sufficient number of shares of Class A Common Stock (as may be adjusted in accordance with the provisions of the Restated Certificate and the Certificate of Designation) for issuance upon conversion of the Shares;

(iv)    225,252,942 shares of Class A Common Stock authorized for issuance to employees, consultants and directors pursuant to its 2004 Stock Plan, under which options to purchase approximately 11,406,747 shares of the Company's Class A Common Stock were issued and outstanding as of February 3, 2014;

(v)    15,000,000 shares of Class A Common Stock authorized for issuance to employees, consultants and directors pursuant to its 2013 Stock Incentive Plan, under which no options to purchase shares of the Company's Class A Common Stock were issued and outstanding as of February 3, 2014;

(vi)    741,665 shares of Class A Common Stock for issuance upon exercise of warrants to purchase the Company's Class A Common Stock; and

(vii)    9,666,670 shares of Series C-1 Preferred Stock for issuance upon conversion of notes convertible into shares of Series C-1 Preferred Stock.

(d)    All issued and outstanding shares of the Company's Class A Common Stock and Preferred Stock (i) have been duly authorized and validly issued and are fully paid and nonassessable and have been approved by all requisite stockholder action, and (ii) were issued in compliance with all applicable state and federal laws concerning the issuance of securities.

(e)    The Shares, when issued and delivered and paid for in compliance with the provisions of this Agreement will be validly issued, fully paid and nonassessable. The Conversion Shares have been duly and validly reserved and, when issued in compliance with the provisions of this Agreement, the Restated Certificate, the Certificate of Designation and applicable law, will be validly issued, fully paid and nonassessable. The Shares and the Conversion Shares will be free of any liens or encumbrances, other than any liens or encumbrances created by or imposed upon the Investors; provided, however, that the Shares and the Conversion Shares are subject to restrictions on transfer under U.S. state and/or federal securities laws and as set forth herein and in the Rights Agreement and the Company's Bylaws and to certain redemption rights in favor of the Company as set forth in the Restated Certificate (including the Certificate of Designation) and Bylaws.

(f)    Except for the conversion privileges of the Series A Preferred, Series B Preferred, Series C Preferred, Series C-1 Preferred and Series C-2 Preferred, the rights provided pursuant to the Rights Agreement, the convertible promissory notes issued in conjunction with the Series C-1 Preferred, as otherwise described in this Agreement, there are no options, warrants or other rights to purchase any of the Company's authorized and unissued capital stock.

3.3    *Authorization.* All corporate action on the part of the Company and its directors, officers and stockholders necessary for the authorization and filing of the Restated Certificate and the Certificate of Designation, the authorization, execution and delivery of the Agreements by the

-4-

THERANOS, INC. CONFIDENTIAL

PFM-GJ-00003375

Company, the authorization, sale, issuance and delivery of the Shares and the Conversion Shares, and the performance of all of the Company's obligations under the Agreements has been taken or will be taken prior to the Initial Closing. The Agreements, when executed and delivered by the Company, shall constitute valid and binding obligations of the Company, enforceable in accordance with their terms, except (i) as limited by laws of general application relating to bankruptcy, insolvency and the relief of debtors, (ii) as limited by rules of law governing specific performance, injunctive relief or other equitable remedies and by general principles of equity, and (iii) to the extent the indemnification provisions contained in the Rights Agreement may further be limited by applicable laws and principles of public policy.

3.4     *Intellectual Property.*

(a)     Rights.    To the knowledge of the Company's executive officers (the "**Company's Knowledge**"), the Company owns or possesses or can obtain on commercially reasonable terms sufficient legal rights to all patents, trademarks, service marks, trade names, copyrights, trade secrets, licenses (software or otherwise), information, processes and other proprietary rights ("**Intellectual Property**") necessary to the business of the Company as presently conducted. To the Company's Knowledge, the Company by operating its business as currently proposed to be conducted will not violate or infringe any patent or trademark rights of any other person that are necessary for conducting the business of the Company as presently contemplated.

(b)     Proprietary Information and Invention Assignment. The Company's current practice is to require each current and former employee and consultant of the Company to execute a confidential information and invention assignment agreement. To the Company's Knowledge, no employee has excluded any inventions or intellectual property from assignment to the Company under such confidential information and invention assignment agreement other than certain intellectual property created by certain employees prior to joining the Company. To the Company's Knowledge, no current employee or consultant of the Company is obligated under any agreement (including licenses, covenants or commitments of any nature) or subject to any judgment, decree or order of any court or administrative agency, or any other restriction that would interfere with the use of his or her best efforts to carry out his or her duties for the Company or to promote the interests of the Company or that would conflict with the Company's business as currently conducted. To the Company's Knowledge, it is not presently nor will it be necessary to utilize any inventions of any existing employees of the Company made prior to their employment by the Company.

3.5     *Compliance with Other Instruments.* The Company is not in violation of any material term of its Restated Certificate (including the Certificate of Designation) or Bylaws, each as amended to date. To the Company's knowledge, the Company is not in violation of any material federal or state statute, rule or regulation applicable to the Company. The execution and delivery of the Agreements by the Company, the performance by the Company of its obligations pursuant to the Agreements, and the issuance of the Shares and the Conversion Shares, will not result in any violation of, or conflict with, or constitute a default under, the Restated Certificate (including the Certificate of Designation) or Bylaws, each as amended to date, nor, to the Company's knowledge, will it result in any material violation of, or materially conflict with, or constitute a material default

-5-

THERANOS, INC. CONFIDENTIAL

under any of its material agreements, nor, to the Company's knowledge, will it result in the creation of any material mortgage, pledge, lien, encumbrance or charge upon any of the properties or assets of the Company.

3.6     *Governmental Consent.* No consent, approval or authorization of or designation, declaration or filing with any governmental authority on the part of the Company is required in connection with the valid execution and delivery of this Agreement, or the offer, sale or issuance of the Shares and the Conversion Shares, or the consummation of any other transaction contemplated by this Agreement, except (i) the filing of the Certificate of Designation with the office of the Secretary of State of the State of Delaware, (ii) the filing of such notices as may be required under the Securities Act of 1933, as amended (the "**Securities Act**") and (iii) such filings as may be required under applicable state securities laws.

3.7     *Offering.* Subject to the accuracy of the Investors' representations and warranties in Section 4, the offer, sale and issuance of the Shares to be issued in conformity with the terms of this Agreement and the issuance of the Conversion Shares, constitute transactions exempt from the registration requirements of Section 5 of the Securities Act and the registration and/or qualification requirements of all applicable state securities laws.

3.8     *Registration Rights.* Except as set forth in the Rights Agreement, the Company is presently not under any obligation and has not granted any rights to register under the Securities Act any of its presently outstanding securities or any of its securities that may hereafter be issued.

3.9     *Brokers or Finders.* The Company has not incurred, and will not incur, directly or indirectly, as a result of any action taken by the Company, any liability for brokerage or finders' fees or agents' commissions or any similar charges in connection with this Agreement or any of the transactions contemplated hereby.

3.10     *Employees.* To the Company's knowledge, there are no strike, labor dispute or union organization activities pending or threatened between it and its employees. To the Company's knowledge, none of its employees belongs to any union or collective bargaining unit.

## SECTION 4

### Representations and Warranties of the Investors

Each Investor hereby, severally and not jointly, represents and warrants to the Company as follows:

4.1     *No Registration.* Such Investor understands that the Shares and the Conversion Shares, have not been, and will not be, registered under the Securities Act by reason of a specific exemption from the registration provisions of the Securities Act, the availability of which depends upon, among other things, the bona fide nature of the investment intent and the accuracy of such Investor's representations as expressed herein or otherwise made pursuant hereto.

-6-

THERANOS, INC. CONFIDENTIAL

4.2     *Investment Intent.* Such Investor is acquiring the Shares and the Conversion Shares for investment for its own account, not as a nominee or agent, and not with the view to, or for resale in connection with, any distribution thereof, and such Investor has no present intention of selling, granting any participation in, or otherwise distributing the same. Such Investor further represents that it does not have any contract, undertaking, agreement or arrangement with any person or entity to sell, transfer or grant participation to such person or entity or to any third person or entity with respect to any of the Shares or the Conversion Shares.

4.3     *Investment Experience.* Such Investor, or its purchaser representative, within the meaning of Regulation D, Rule 501(h), promulgated by the Securities and Exchange Commission (its "**Purchaser Representative**"), has substantial experience in evaluating and investing in private placement transactions of securities in companies similar to the Company and acknowledges that such Investor or its Purchaser Representative can protect its own interests. Such Investor or its Purchaser Representative has such knowledge and experience in financial and business matters so that such Investor or its Purchaser Representative is capable of evaluating the merits and risks of its investment in the Company.

4.4     *Speculative Nature of Investment.* Such Investor understands and acknowledges that the Company has a limited financial and operating history and that an investment in the Company is highly speculative and involves substantial risks. Such Investor can bear the economic risk of such Investor's investment and is able, without impairing such Investor's financial condition, to hold the Shares and the Conversion Shares for an indefinite period of time and to suffer a complete loss of such Investor's investment.

4.5     *Access to Data.* Such Investor has had an opportunity to ask questions of, and receive answers from, the officers of the Company concerning the Agreements, the exhibits and schedules attached hereto and thereto and the transactions contemplated by the Agreements, as well as the Company's business, management and financial affairs, which questions were answered to its satisfaction. Such Investor believes that it has received all the information such Investor considers necessary or appropriate for deciding whether to purchase the Shares and Conversion Shares. Such Investor understands that such discussions, as well as any information issued by the Company, were intended to describe certain aspects of the Company's business and prospects, but were not necessarily a thorough or exhaustive description. Such Investor acknowledges that any business plans prepared by the Company have been, and continue to be, subject to change and that any projections included in such business plans or otherwise are necessarily speculative in nature, and it can be expected that some or all of the assumptions underlying the projections will not materialize or will vary significantly from actual results. Such Investor also acknowledges that it is relying solely on its own counsel and not on any statements or representations of the Company or its agents for legal advice with respect to this investment or the transactions contemplated by the Agreements. Nothing in this Section 4.5 shall be deemed to limit or modify the Company's representations in Section 3.

4.6     *Accredited Investor.* The Investor is an "accredited investor" within the meaning of Regulation D, Rule 501(a), promulgated by the Securities and Exchange Commission under the

-7-

THERANOS, INC. CONFIDENTIAL

Rule 6(e) Grand Jury Material                    PFM-GJ-00003378
FOIA Confidential Treatment Requested
Trial Exh. 1505 Page 0007

Securities Act and shall submit to the Company such further assurances of such status as may be reasonably requested by the Company.

4.7    *Residency.* The residency of the Investor (or, in the case of a partnership or corporation, such entity's principal place of business) is correctly set forth on the Schedule of Investors.

4.8    *Rule 144.* Such Investor acknowledges that the Shares and the Conversion Shares must be held indefinitely unless subsequently registered under the Securities Act or an exemption from such registration is available. Such Investor is aware of the provisions of Rule 144 promulgated under the Securities Act which permit limited resale of shares purchased in a private placement subject to the satisfaction of certain conditions, including among other things, the existence of a public market for the shares, the availability of certain current public information about the Company, the resale occurring not less than one year after a party has purchased and paid for the security to be sold, the sale being effected through a "broker's transaction" or in transactions directly with a "market maker" and the number of shares being sold during any three-month period not exceeding specified limitations. Such Investor understands that the current public information referred to above is not now available and the Company has no present plans to make such information available. Such Investor acknowledges and understands that notwithstanding any obligation under the Rights Agreement, the Company may not be satisfying the current public information requirement of Rule 144 at the time the Investor wishes to sell the Shares or the Conversion Shares, and that, in such event, the Investor may be precluded from selling such securities under Rule 144, even if the other requirements of Rule 144 have been satisfied. Such Investor acknowledges that, in the event all of the requirements of Rule 144 are not met, registration under the Securities Act or an exemption from registration will be required for any disposition of the Shares or the underlying Class A Common Stock. Such Investor understands that, although Rule 144 is not exclusive, the Securities and Exchange Commission has expressed its opinion that persons proposing to sell restricted securities received in a private offering other than in a registered offering or pursuant to Rule 144 will have a substantial burden of proof in establishing that an exemption from registration is available for such offers or sales and that such persons and the brokers who participate in the transactions do so at their own risk.

4.9    *No Public Market.* Such Investor understands and acknowledges that no public market now exists for any of the securities issued by the Company and that the Company has made no assurances that a public market will ever exist for the Company's securities.

*4.10    Authorization.*

(a)    Such Investor has all requisite power and authority to execute and deliver the Agreements, to purchase the Shares hereunder and to carry out and perform its obligations under the terms of the Agreements. All action on the part of the Investor necessary for the authorization, execution, delivery and performance of the Agreements, and the performance of all of the Investor's obligations under the Agreements, has been taken or will be taken prior to the Closing.

-8-

THERANOS, INC. CONFIDENTIAL

(b)    The Agreements, when executed and delivered by the Investor, will constitute valid and legally binding obligations of the Investor, enforceable in accordance with their terms except: (i) to the extent that the indemnification provisions contained in the Rights Agreement may be limited by applicable law and principles of public policy, (ii) as limited by applicable bankruptcy, insolvency, reorganization, moratorium and other laws of general application affecting enforcement of creditors' rights generally, and (iii) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies or by general principles of equity.

(c)    No consent, approval, authorization, order, filing, registration or qualification of or with any court, governmental authority or third person is required to be obtained by the Investor in connection with the execution and delivery of the Agreements by the Investor or the performance of the Investor's obligations hereunder or thereunder.

4.11    *Brokers or Finders*. Such Investor has not engaged any brokers, finders or agents, and neither the Company nor any other Investor has, nor will, incur, directly or indirectly, as a result of any action taken by the Investor, any liability for brokerage or finders' fees or agents' commissions or any similar charges in connection with the Agreements.

4.12    *Tax Advisors*. Such Investor has reviewed with its own tax advisors the U.S. federal, state, local and foreign tax consequences of this investment and the transactions contemplated by the Agreements. With respect to such matters, such Investor relies solely on such advisors and not on any statements or representations of the Company or any of its agents, written or oral. The Investor understands that it (and not the Company) shall be responsible for its own tax liability that may arise as a result of this investment or the transactions contemplated by the Agreements.

4.13    *Legends*. Such Investor understands and agrees that the certificates evidencing the Shares or the Conversion Shares, or any other securities issued in respect of the Shares or the Conversion Shares upon any stock split, stock dividend, recapitalization, merger, consolidation or similar event, shall bear the following legend (in addition to any legend required by the Rights Agreement or under applicable state securities laws):

"THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "**ACT**"), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO REGISTRATION OR AN EXEMPTION THEREFROM. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

-9-

THERANOS, INC. CONFIDENTIAL

THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE, INCLUDING A LOCK-UP PERIOD OF UP TO 180 DAYS (SUBJECT TO EXTENSION) IN THE EVENT OF A PUBLIC OFFERING, AND A RIGHT OF FIRST REFUSAL IN FAVOR OF THE ISSUER, AS SET FORTH IN AN INVESTOR RIGHTS AGREEMENT AND THE BYLAWS, COPIES OF WHICH MAY BE OBTAINED AT THE PRINCIPAL OFFICE OF THE COMPANY.

THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO A MANDATORY REDEMPTION RIGHT IN FAVOR OF THE ISSUER AS SET FORTH IN THE ISSUER'S AMENDED AND RESTATED CERTIFICATE OF INCORPORATION (INCLUDING THE CERTIFICATE OF DESIGNATION OF SERIES C-2 PREFERRED STOCK) AND BYLAWS, COPIES OF WHICH MAY BE OBTAINED AT THE PRINCIPAL OFFICE OF THE ISSUER."

4.14    *Investment Representations, Warranties and Covenants by Non-U.S. Persons.* Each Investor who is a Non-U.S. person (as that term is defined in Section 4.14(c) of this Agreement) hereby represents and warrants to the Company as follows:

(a)    This Agreement is made by the Company with such Investor who is a Non-U.S. person in reliance upon such Non-U.S. person's representations, warranties and covenants made in this Section 4.14.

(b)    Such Non-U.S. person has been advised and acknowledges that:

(i)    the Shares and the Conversion Shares have not been, and when issued, will not be registered under the Securities Act, the securities laws of any state of the United States or the securities laws of any other country;

(ii)    in issuing and selling the Shares and the Conversion Shares to such Non-U.S. person pursuant hereto, the Company is relying upon the "safe harbor" provided by Regulation S and/or on Section 4(2) under the Securities Act;

(iii)    it is a condition to the availability of the Regulation S "safe harbor" that the Shares and the Conversion Shares not be offered or sold in the United States or to a U.S. person until the expiration of a period of one year following the Closing Date; and

(iv)    notwithstanding the foregoing, prior to the expiration of one year after the Closing (the "**Restricted Period**"), the Shares and the Conversion Shares may be offered and sold by the holder thereof only if such offer and sale is made in compliance with the terms of this Agreement and either: (A) if the offer or sale is within the United States or to or for the account of a U.S. person (as such terms are defined in Regulation S), the securities are offered and sold pursuant to an effective registration statement or pursuant to Rule 144 under the Securities Act or pursuant to

-10-

THERANOS, INC. CONFIDENTIAL

an exemption from the registration requirements of the Securities Act; or (B) the offer and sale is outside the United States and to other than a U.S. person.

      (c)    As used herein, the term "**United States**" means and includes the United States of America, its territories and possessions, any State of the United States, and the District of Columbia, and the term "**U.S. person**" (as defined in Regulation S) means:

      (i)    a natural person resident in the United States;

      (ii)    any partnership or corporation organized or incorporated under the laws of the United States;

      (iii)    any estate of which any executor or administrator is a U.S. person;

      (iv)    any trust of which any trustee is a U.S. person;

      (v)    any agency or branch of a foreign entity located in the United States;

      (vi)    any nondiscretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. person;

      (vii)    any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated and (if an individual) resident in the United States; and

      (viii)    a corporation or partnership organized under the laws of any foreign jurisdiction and formed by a U.S. person principally for the purpose of investing in securities not registered under the Securities Act, unless it is organized or incorporated, and owned, by accredited investors (as defined in Rule 501(a) under the Securities Act) who are not natural persons, estates or trusts.

As used herein, the term "**Non-U.S. person**" means any person who is not a U.S. person or is deemed not to be a U.S. person under Rule 902(k)(2) of the Securities Act.

      (d)    Such Non-U.S. person agrees that with respect to the Shares and the Conversion Shares until the expiration of the Restricted Period:

      (i)    such Non-U.S. person, its agents or its representatives have not and will not solicit offers to buy, offer for sale or sell any of the Shares and the Conversion Shares, or any beneficial interest therein in the United States or to or for the account of a U.S. person during the Restricted Period; and

      (ii)    notwithstanding the foregoing, prior to the expiration of the Restricted Period, the Shares and the Conversion Shares may be offered and sold by the holder thereof only if such offer and sale is made in compliance with the terms of this Agreement and either: (A) if the offer or sale is within the United States or to or for the account of a U.S. person (as such terms are

-11-

THERANOS, INC. CONFIDENTIAL

defined in Regulation S), the securities are offered and sold pursuant to an effective registration statement or pursuant to Rule 144 under the Securities Act or pursuant to an exemption from the registration requirements of the Securities Act; or (B) the offer and sale is outside the United States and to other than a U.S. person; and

(iii)    such Non-U.S. person shall not engage in hedging transactions with regard to the Shares and the Conversion Shares unless in compliance with the Securities Act.

The foregoing restrictions are binding upon subsequent transferees of the Shares and the Conversion Shares, except for transferees pursuant to an effective registration statement. Such Non-U.S. person agrees that after the Restricted Period, the Shares and the Conversion Shares may be offered or sold within the United States or to or for the account of a U.S. person only pursuant to applicable securities laws.

(e)    Such Non-U.S. person has not engaged, nor is it aware that any party has engaged, and such Non-U.S. person will not engage or cause any third party to engage, in any directed selling efforts (as such term is defined in Regulation S) in the United States with respect to the Shares and the Conversion Shares.

(f)    Such Non-U.S. person: (i) is domiciled and has its principal place of business outside the United States; (ii) certifies it is not a U.S. person and is not acquiring the Shares or the Conversion Shares for the account or benefit of any U.S. person; and (iii) at the time of the Closing Date, the Non-U.S. person or persons acting on Non-U.S. person's behalf in connection therewith will be located outside the United States.

(g)    At the time of offering to such Non-U.S. person and communication of such Non-U.S. person's order to purchase the Shares or the Conversion Shares and at the time of such Non-U.S. Person's execution of this Agreement, the Non-U.S. person or persons acting on Non-U.S. person's behalf in connection therewith were located outside the United States.

(h)    Such Non-U.S. person is not a "distributor" (as defined in Regulation S) or a "dealer" (as defined in the Securities Act).

(i)    Such Non-U.S. person acknowledges that the Company shall make a notation in its stock books regarding the restrictions on transfer set forth in this Section 4.14 and shall transfer such shares on the books of the Company only to the extent consistent therewith.

In particular, such Non-U.S. person acknowledges that the Company shall refuse to register any transfer of the Shares or the Conversion Shares not made in accordance with the provisions of Regulation S, pursuant to registration under the Securities Act or pursuant to an available exemption from registration.

(j)    Such Investor understands and agrees that each certificate held by such Non-U.S. person representing the Shares or the Conversion Shares, or any other securities issued in respect of the Shares or any the Conversion Shares upon conversion thereof upon any stock split,

-12-

THERANOS, INC. CONFIDENTIAL

stock dividend, recapitalization, merger, consolidation or similar event, shall bear the following legend (in addition to any legend required by this Agreement, by Sections 417 and 418 of the California Corporations Code or under applicable state securities laws):

> THE SHARES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND MAY NOT BE SOLD, TRANSFERRED, ASSIGNED, PLEDGED OR HYPOTHECATED EXCEPT IN ACCORDANCE WITH THE PROVISIONS OF REGULATION S PROMULGATED UNDER THE SECURITIES ACT, PURSUANT TO REGISTRATION UNDER THE SECURITIES ACT OR PURSUANT TO AN AVAILABLE EXEMPTION FROM REGISTRATION. HEDGING TRANSACTIONS INVOLVING THE SHARES REPRESENTED HEREBY MAY NOT BE CONDUCTED UNLESS IN COMPLIANCE WITH THE SECURITIES ACT. THIS CERTIFICATE MUST BE SURRENDERED TO THE COMPANY OR ITS TRANSFER AGENT AS A CONDITION PRECEDENT TO THE SALE, PLEDGE, HYPOTHECATION OR ANY OTHER TRANSFER OF ANY INTEREST IN ANY OF THE SHARES REPRESENTED BY THIS CERTIFICATE.

4.15    *Representations by Non-U.S. Persons*. If an Investor is not a U.S. person, such Investor hereby represents that such Investor is satisfied as to the full observance of the laws of such Investor's jurisdiction in connection with any invitation to subscribe for the Shares and the Conversion Shares or any use of the Agreements, including (i) the legal requirements within such Investor's jurisdiction for the purchase of Shares and the Conversion Shares, (ii) any foreign exchange restrictions applicable to such purchase, (iii) any governmental or other consents that may need to be obtained and (iv) the income tax and other tax consequences, if any, that may be relevant to the purchase, holding, redemption, sale or transfer of such securities. Such Investor's subscription and payment for, and such Investor's continued beneficial ownership of, the Shares and the Conversion Shares will not violate any applicable securities or other laws of such Investor's jurisdiction.

## SECTION 5

### Conditions to Investors' Obligations to Close

Each Investor's obligation to purchase the Shares at a Closing is subject to the fulfillment on or before the Closing of each of the following conditions, unless waived in writing by the applicable Investor purchasing the Shares in such Closing:

5.1    *Representations and Warranties*. With respect to the Initial Closing and any Subsequent Closing, the representations and warranties made by the Company in Section 3 of this Agreement shall be true and correct in all material respects as of the date of such closing.

-13-

THERANOS, INC. CONFIDENTIAL

5.2     *Covenants.* All covenants, agreements and conditions contained in this Agreement to be performed by the Company on or prior to the Initial Closing shall have been performed or complied with by it on or before the Initial Closing.

5.3     *Blue Sky.* The Company shall have obtained all necessary Blue Sky law permits and qualifications, or have the availability of exemptions therefrom, required by any state for the offer and sale of the Shares and the Conversion Shares.

5.4     *Certificate of Designation.* The Certificate of Designation shall have been duly authorized, executed and filed with and accepted by the Secretary of State of the State of Delaware.

5.5     *Rights Agreement.* The Company and Holders of a majority of the combined voting power of the Registrable Securities (as defined in the Rights Agreement) (on an as-converted to Class A Common Stock basis) and Class B Common Stock, voting together as a single class, shall have executed and delivered the Rights Agreement.

5.6     *Voting Agreement.* The Company, the Founder, and holders of a majority of the aggregate voting power of the Voting Parties (each as defined in the Voting Agreement) shall have executed and delivered the Voting Agreement.

5.7     *Proceedings and Documents.* All corporate and other proceedings required to carry out the transactions contemplated by this Agreement, and all instruments and other documents relating to such transactions, shall be reasonably satisfactory in form and substance to the Investors, and the Investors shall have been furnished with such instruments and documents as they shall have reasonably requested.

5.8     *Consents and Waivers.* The Company shall have obtained any and all consents, permits and waivers necessary or appropriate for the performance by the Company of its obligations pursuant to the Agreements.

## SECTION 6

### Conditions to Company's Obligation to Close

The Company's obligation to sell and issue the Shares at each Closing is subject to the fulfillment on or before such Closing of the following conditions, unless waived in writing by the Company:

6.1     *Representations and Warranties.* The representations and warranties made by the Investors in such Closing in Section 4 shall be true and correct in all material respects when made and shall be true and correct in all material respects as of the date of such Closing.

6.2     *Covenants.* All covenants, agreements and conditions contained in the Agreements to be performed by Investors on or prior to the date of such Closing shall have been performed or complied with as of the date of such Closing.

-14-

THERANOS, INC. CONFIDENTIAL

6.3     *Compliance with Securities Laws.* The Company shall be satisfied that the offer and sale of the Shares and the Conversion Shares shall be qualified or exempt from registration or qualification under all applicable federal and state securities laws (including receipt by the Company of all necessary blue sky law permits and qualifications required by any state, if any).

6.4     *Certificate of Designation.* The Certificate of Designation shall have been duly authorized, executed and filed with and accepted by the Secretary of State of the State of Delaware.

6.5     *Rights Agreement.* The Company and Holders of a majority of the combined voting power of the Registrable Securities (as defined in the Rights Agreement) (on an as-converted to Class A Common Stock basis) and Class B Common Stock, voting together as a single class, shall have executed and delivered the Rights Agreement.

6.6     *Voting Agreement.* The Company, the Founder, and holders of a majority of the aggregate voting power of the Voting Parties (each as defined in the Voting Agreement) shall have executed and delivered the Voting Agreement.

6.7     *Proceedings and Documents.* All corporate and other proceedings required to carry out the transactions contemplated by this Agreement, and all instruments and other documents relating to such transactions, shall be reasonably satisfactory in form and substance to the Company, and the Company shall have been furnished with such instruments and documents as they shall have reasonably requested.

## SECTION 7

### Miscellaneous

7.1     *Amendment.* Except as expressly provided herein, neither this Agreement nor any term hereof may be amended, waived, discharged or terminated other than by a written instrument referencing this Agreement and signed by the Company and the Stockholder Representative; provided, however, that Investors purchasing shares in a Closing after the Initial Closing may become parties to this Agreement in accordance with **Section 2.1** without any amendment of this Agreement pursuant to this paragraph or any consent or approval of any other Investor. Any such amendment, waiver, discharge or termination effected in accordance with this paragraph shall be binding upon each holder of any securities purchased under this Agreement at the time outstanding (including securities into which such securities have been converted or exchanged or for which such securities have been exercised) and each future holder of all such securities. Each Investor acknowledges that by the operation of this paragraph, the Stockholder Representative will have the right and power to diminish or eliminate all rights of such Investor under this Agreement.

-15-

THERANOS, INC. CONFIDENTIAL

7.2    *Notices.* All notices and other communications required or permitted hereunder shall be in writing and shall be mailed by registered or certified mail, postage prepaid or otherwise delivered by hand or by messenger addressed:

(a)    if to an Investor, at the Investor's address as shown in the Company's records, as may be updated in accordance with the provisions hereof;

(b)    if to any other holder of any Shares or Conversion Shares, at such address as shown in the Company's records, or, until any such holder so furnishes an address to the Company, then to and at the address of the last holder of such Shares or Conversion Shares for which the Company has contact information in its records; or

(c)    if to the Company, one copy should be sent to each of Elizabeth Holmes and Valeska Pederson Hintz, Theranos, Inc. 1601 S. California Avenue, Palo Alto, CA 94304, or at such other address as the Company shall have furnished to the Investors, with copies to Katharine A. Martin, Wilson Sonsini Goodrich & Rosati, 650 Page Mill Road, Palo Alto, California 94304.

Each such notice or other communication shall for all purposes of this Agreement be treated as effective or having been given when delivered if delivered personally, or, if sent by mail, at the earlier of its receipt or 72 hours after the same has been deposited in a regularly maintained receptacle for the deposit of the United States mail, addressed and mailed as aforesaid.

7.3    *Governing Law.* This Agreement shall be governed in all respects by the internal laws of the State of Delaware as applied to agreements entered into among Delaware residents to be performed entirely within Delaware, without regard to principles of conflicts of law.

7.4    *Brokers or Finders.* The Company shall indemnify and hold harmless each Investor from any liability for any commission or compensation in the nature of a brokerage or finder's fee or agent's commission (and the costs and expenses of defending against such liability or asserted liability) for which such Investor or any of its constituent partners, members, officers, directors, employees or representatives is responsible to the extent such liability is attributable to any inaccuracy or breach of the representations and warranties contained in **Section 3.16**, and each Investor agrees to indemnify and hold harmless the Company and each other Investor from any liability for any commission or compensation in the nature of a brokerage or finder's fee or agent's commission (and the costs and expenses of defending against such liability or asserted liability) for which the Company, any other Investor or any of their constituent partners, members, officers, directors, employees or representatives is responsible to the extent such liability is attributable to any inaccuracy or breach of the representations and warranties contained in **Section 4.11**.

7.5    *Expenses.* The Company and the Investors shall each pay their own expenses in connection with the transactions contemplated by this Agreement.

7.6    *Survival.* The representations, warranties, covenants and agreements made in this Agreement shall survive any investigation made by any party hereto and the closing of the transactions contemplated hereby.

-16-

THERANOS, INC. CONFIDENTIAL

7.7     *Successors and Assigns.* This Agreement, and any and all rights, duties and obligations hereunder, shall not be assigned, transferred, delegated or sublicensed by any Investor without the prior written consent of the Company. Any attempt by an Investor without such permission to assign, transfer, delegate or sublicense any rights, duties or obligations that arise under this Agreement shall be void. Subject to the foregoing and except as otherwise provided herein, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the successors, assigns, heirs, executors and administrators of the parties hereto.

7.8     *Entire Agreement.* This Agreement, including the exhibits attached hereto, constitute the full and entire understanding and agreement among the parties with regard to the subjects hereof and supersede any prior agreements or understandings with respect to the subject matter hereof.

7.9     *Delays or Omissions.* Except as expressly provided herein, no delay or omission to exercise any right, power or remedy accruing to any party to this Agreement upon any breach or default of any other party under this Agreement shall impair any such right, power or remedy of such non-defaulting party, nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring, nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent or approval of any kind or character on the part of any party of any breach or default under this Agreement, or any waiver on the part of any party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to any party to this Agreement, shall be cumulative and not alternative.

7.10    *California Corporate Securities Law.* THE SALE OF THE SECURITIES WHICH ARE THE SUBJECT OF THIS AGREEMENT HAS NOT BEEN QUALIFIED WITH THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA AND THE ISSUANCE OF SUCH SECURITIES OR THE PAYMENT OR RECEIPT OF ANY PART OF THE CONSIDERATION THEREFOR PRIOR TO SUCH QUALIFICATION IS UNLAWFUL UNLESS THE SALE OF SECURITIES IS EXEMPT FROM QUALIFICATION BY SECTION 25100, 25102, OR 25105 OF THE CALIFORNIA CORPORATIONS CODE. THE RIGHTS OF ALL PARTIES TO THIS AGREEMENT ARE EXPRESSLY CONDITIONED UPON SUCH QUALIFICATION BEING OBTAINED, UNLESS THE SALE IS SO EXEMPT.

7.11    *Severability.* If any provision of this Agreement becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, portions of such provision, or such provision in its entirety, to the extent necessary, shall be severed from this Agreement, and such court will replace such illegal, void or unenforceable provision of this Agreement with a valid and enforceable provision that will achieve, to the extent possible, the same economic, business and other purposes of the illegal, void or unenforceable provision. The balance of this Agreement shall be enforceable in accordance with its terms.

7.12    *Counterparts.* This Agreement may be executed in any number of counterparts, each of which shall be enforceable against the parties actually executing such counterparts, and all of which together shall constitute one instrument.

-17-

THERANOS, INC. CONFIDENTIAL

7.13    *Telecopy Execution and Delivery.* A facsimile, telecopy or other reproduction of this Agreement may be executed by one or more parties hereto and delivered by such party by facsimile or any similar electronic transmission device pursuant to which the signature of or on behalf of such party can be seen. Such execution and delivery shall be considered valid, binding and effective for all purposes. At the request of any party hereto, all parties hereto agree to execute and deliver an original of this Agreement as well as any facsimile, telecopy or other reproduction hereof.

7.14    *Jurisdiction; Venue.* Each of the parties to this Agreement irrevocably submits to the exclusive jurisdiction of the Delaware Court of Chancery (and if the Delaware Court of Chancery is unavailable, any state or federal court sitting in Wilmington, Delaware), as well as to the jurisdiction of all courts to which an appeal may be taken therefrom, in any suit, action, or proceeding arising out of or relating to this Agreement. Each of the parties to this Agreement waives any defense of lack of personal jurisdiction or inconvenient forum to any suit, action, or proceeding brought in accordance with this paragraph. Each of the parties to this Agreement agrees to waive any bond, surety, or other security that might be required of any other party with respect to any such suit, action, or proceeding, including any appeal thereof. Each of the parties to this Agreement agrees to accept service of process by certified mail, return receipt requested, addressed to such party at the address set forth in Section 7.2 hereof; provided, that nothing in this paragraph shall affect the right of any party to serve process in any other manner permitted by law. EACH OF THE PARTIES TO THIS AGREEMENT OTHER THAN THE COMPANY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY SUIT, ACTION, OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

7.15    *Further Assurances.* Each party hereto agrees to execute and deliver, by the proper exercise of its corporate, limited liability company, partnership or other powers, all such other and additional instruments and documents and do all such other acts and things as may be necessary to effectuate the terms and conditions of this Agreement.

7.16    *Attorney's Fees.* In the event that any suit or action is instituted to enforce any provisions in this Agreement, the prevailing party in such dispute shall be entitled to recover from the losing party such reasonable fees and expenses of attorneys and accountants, which shall include, without limitation, all fees, costs and expenses of appeals.

7.17    *Waiver of Potential Conflicts of Interest.* Each of the Investors and the Company acknowledges that Wilson Sonsini Goodrich & Rosati, Professional Corporation ("WSGR") may have represented and may currently represent certain of the Investors. In the course of such representation, WSGR may have come into possession of confidential information relating to such Investors. Each of the Investors and the Company acknowledges that WSGR is representing only the Company in this transaction. Each of the Investors and the Company understands that an affiliate of WSGR may also be an Investor under this Agreement. Pursuant to Rule 3-310 of the Rules of Professional Conduct promulgated by the State Bar of California, an attorney must avoid representations in which the attorney has or had a relationship with another party interested in the representation without the informed written consent of all parties affected. By executing this Agreement, each of the Investors and the Company hereby waives any actual or potential conflict of

-18-

THERANOS, INC. CONFIDENTIAL

interest which may arise as a result of WSGR's representation of such persons and entities, WSGR's possession of such confidential information and the participation by WSGR's affiliate in the financing. Each of the Investors and the Company represents that it has had the opportunity to consult with independent counsel concerning the giving of this waiver.



-19-

THERANOS, INC. CONFIDENTIAL

Rule 6(e) Grand Jury Material
FOIA Confidential Treatment Requested
Trial Exh. 1505 Page 0019

PFM-GJ-00003390

The parties are signing this Series C-2 Preferred Stock Purchase Agreement as of the date stated in the introductory clause.

THERANOS, INC.
a Delaware corporation


By: _____
Elizabeth Holmes, Chief Executive Officer

SHAREHOLDER REPRESENTATIVE


By: _____
Elizabeth Holmes

[SIGNATURE PAGE TO SERIES C-2 PREFERRED STOCK PURCHASE AGREEMENT]

Rule 6(e) Grand Jury Material                         PFM-GJ-00003391
FOIA Confidential Treatment Requested
Trial Exh. 1505 Page 0020

## EXHIBIT A

## SCHEDULE OF INVESTORS

Investors not listed per confidentiality agreements with the Company.



Rule 6(e) Grand Jury Material
FOIA Confidential Treatment Requested

PFM-GJ-00003392

<u>**EXHIBIT B**</u>

**CERTIFICATE OF DESIGNATION OF SERIES C-2 PREFERRED STOCK**



Rule 6(e) Grand Jury Material
FOIA Confidential Treatment Requested
Trial Exh. 1505 Page 0022

PFM-GJ-00003393

## EXHIBIT C

## AMENDED AND RESTATED INVESTORS' RIGHTS AGREEMENT



Rule 6(e) Grand Jury Material
FOIA Confidential Treatment Requested

# EXHIBIT D

## AMENDED AND RESTATED VOTING AGREEMENT



Rule 6(e) Grand Jury Material
FOIA Confidential Treatment Requested

Trial Exh. 1505 Page 0024